**ORIGINAL**

LAW OFFICE OF MARK D. CLEMENT
Attorney at Law
MARK D. CLEMENT    5295-0

Lawyers Building, Suite 102
550 Halekauwila Street
Honolulu, Hawaii 96813
Telephone No. (808) 545-2488
Facsimile No. (808) 545-2933
Email: Mark@markclementlaw.com

Attorney for Plaintiff
FRANCIS H.P. KEANAAINA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 17 2008

at 2 o'clock and 20 min. __ M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| FRANCIS H.P. KEANAAINA, ) | CIVIL NO: CV07-00118 DAE KSC |
| ) | (FAIR CREDIT REPORTING ACT) |
| ) | |
| Plaintiff, ) | |
| ) | FIRST AMENDED COMPLAINT |
| vs. ) | AND DEMAND FOR JURY TRIAL; |
| ) | SUMMONS; CERTFICATE OF |
| ) | SERVICE |
| EQUIFAX INFORMATION ) | |
| SERVICES, LLC; TRANS UNION ) | |
| LLC; LANDSAFE CREDIT, INC.; ) | |
| EXPERIAN INFORMATION ) | |
| SOLUTIONS, INC.; LEXISNEXIS ) | |
| DOCUMENT SOLUTIONS, INC.; ) | |
| LEXISNEXIS RISK AND ) | |
| INFORMATION ANALYTICS ) | |
| GROUP, INC.; JOHN DOES 1-10; ) | |
| JANE DOES 1-10; DOE ) | |
| CORPORATIONS 4-10; DOE ) | |
| PARTNERSHIPS 1-10; AND ) | |
| DOE GOVERNMENTAL ENTITIES ) | |
| 1-10, ) | |
| Defendants. ) | |
| ) | |

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1.

This court has jurisdiction under 15 USC § 1681p.

2.

Plaintiff FRANCIS H.P. KEANAAINA ("Plaintiff") is a consumer as defined by the Fair Credit Report Act ("FCRA"), 15 USC § 1681a(c).

3.

Defendants herein are:

a.   **EQUIFAX INFORMATION SERVICES, LLC**, which may also hereinafter be referred to as "Equifax," is a foreign corporation authorized to do and doing business in the State of Hawaii.  Defendant Equifax is a consumer reporting agency as defined by FCRA, 15 USC § 1681a(f);

b.   **TRANS UNION, LLC**, which may also hereinafter be referred to as "Trans Union" and "TU," is a foreign corporation authorized to do and doing business in the State of Hawaii.  Defendant Trans Union is a consumer reporting agency as defined by FCRA, 15 USC § 1681a(f);

c.   **EXPERIAN INFORMATION SOLUTIONS, INC.**, which may also hereinafter be referred to as "Experian", is a foreign corporation authorized to do and doing business in the State of Hawaii.  Defendant Experian is a consumer reporting agency as defined by FCRA, 15 USC § 1681a(f).

2

d.    **LANDSAFE CREDIT, INC.**, which  may also hereinafter be referred to as "LandSafe", is a foreign corporation authorized to do and doing business in the State of Hawaii.   Defendant LandSafe is a reseller of information contained in the database of the credit reporting agencies under 15 USC § 1681a(u);

e.    **LEXISNEXIS DOCUMENT SOLUTIONS, INC.**, which is hereinafter referred to  as "LexisNexis Document", is a foreign corporation authorized to do and doing business in the State of Hawaii.   Defendant LexisNexis Document is a vendor of consumer information to consumer reporting agencies under 15 USC § 1681s-2, and **LEXISNEXIS RISK AND INFORMATION ANALYTICS GROUP, INC.**, which is hereinafter referred to as "LexisNexis Risk", is a registered domestic corporation of the State of Minnesota, but not registered to do business within the State of Hawaii. Defendant LexisNexis Risk is a vendor of consumer information to consumer reporting agencies under 15 USC § 1681s-2. Defendants LexisNexis Document and LexisNexis Risk are referred to collectively herein as "Defendants LexisNexis."

f.    **JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 4-10; DOE PARTNERSHIPS 1-10; AND DOE GOVERNMENTAL ENTITIES 1-10** which may also be hereinafter referred to as "Doe

Defendants," are vendors that furnish public records information to Consumer Reporting Agencies under 15 USC § 1681s-2.

g.  Doe Defendants are sued herein under fictitious names because their true names and identities are presently unknown to Plaintiff, except that they were connected to the present lawsuit in some manner and/or are persons, corporations, entities, agents, representatives, business entities, associations, employers, employees, or governmental entities or agencies responsible for the conduct complained of herein or were in some other manner presently unknown to Plaintiff engaged in the activities alleged herein, and/or were in some manner responsible for the injuries and damages to Plaintiff. Plaintiff will identify the true names and capacities, activities and/or responsibilities when such information is ascertained. Plaintiff has made diligent and good-faith efforts to ascertain the identities of those responsible, including a review of material generated in the investigation of the incident which forms the basis of this action.

h.  The above named Consumer Reporting Agency Defendants, Equifax, Trans Union, and Experian shall be collectively referred to herein as "Defendants CRAs."

4

4.

FIRST AMERICAN CREDCO, which may also hereinafter be referred to as "CREDCO," is a foreign corporation authorized to do and doing business in the State of Hawaii.   CREDCO is a reseller of information contained in the database of the credit reporting agencies under 15 USC § 1681a(u).  CREDCO entered into a settlement with Plaintiff and is no longer a Defendant in this matter.

FIRST HAWAIIAN BANK, which may also hereinafter be referred to as "First Hawaiian Bank" or "FHB" is a domestic corporation authorized to do and doing business in the State of Hawaii.  FHB furnishes information to consumer reporting agencies under 15 USC §1681s-2; FHB entered into a settlement with Plaintiff and is no longer a Defendant in this matter.

5.

In 1999, Plaintiff and his partner, Mr. Keith Brink (hereinafter "Keith Brink") purchased their home at 78-6588 Mamalahoa, Highway, Holualoa, Hawaii, 96725 (hereinafter "Holualoa Property") as joint tenants. Plaintiff and Keith Brink operated a business together that created finances sufficient to purchase, and pay expenses related to, their home.  Inasmuch as Plaintiff had just started establishing credit, Keith Brink secured a mortgage for the Holualoa Property in his name only with Home Capital Inc.  As of 1999, Plaintiff commenced focused efforts to establish his own personal credit outside of his business activities.

6.

On or about June 27, 2006, Plaintiff's sister, Trudy Ann Mealoha Underwood, attempted to obtain a loan to pay off some of her debts.  Plaintiff's sister was denied the loan and Plaintiff attempted to help his sister by co-signing on a new loan application at the Hawaii Community Federal Credit Union with his sister.  Plaintiff attempted to qualify for a consumer loan and was denied credit at several loan amounts, including as low as $5,000.00, due to inaccurate credit information reported by Defendants Trans Union and Equifax on Plaintiff's credit reports.   Prior to Plaintiff's attempt to help his sister, Plaintiff did not experience any problems qualifying for credit and had established a very good credit history of which he was proud and had worked hard to maintain for himself and his O'hana.  Plaintiff's loan officer at the Federal Credit Union, Brian Iwasaki, informed Plaintiff (in a very derogatory manner) that Plaintiff's credit was very bad and that there was approximately $60,000 in state and federal income tax liens on Plaintiff's credit report. Plaintiff implemented a focused effort to resolve these reporting inaccuracies as he had planned and saved for years to be able to finally build a second family home on his Holualoa property in Hawaii (hereinafter referred to as the "O'hana home") which was large and comfortable enough for his entire family and had planned to commence construction by the end of summer 2006.

7.

So, the next day, June 28, 2006, Plaintiff acquired a copy of his "three-in-one" credit report from Equifax ("Trans Union Report #1") to figure out what sort of reporting on his credit report resulted in him being denied a loan for his sister. Plaintiff discovered that his credit file with Trans Union had been mixed or merged with his father's credit file, Francis Keanaaina. Plaintiff's Social Security Number is 575-27-xxxx and Plaintiff's father's Social Security Number is 575-28-xxxx. The first 3 numbers are identical.

8.

Plaintiff discovered that Trans Union was inaccurately reporting information and accounts, including identifying a wrong social security number (his father's), on Trans Union Report #1 as follows:

    a.    Bank of America Account Number 43424600xxxx ("Bank of America Account"). This is not Plaintiff's account.

    b.    First Hawaiian Bank Account Number 6751xxxx ("FHB Account #2). This is not Plaintiff's account.

    c.    First Hawaiian Bank Account Number 2222xxxx ("FHB Account #3"). This is not Plaintiff's account.

    d.    NCO FIN/67 Account Number 186xxxx ("NCO Account"). This is not Plaintiff's account.

e.      State Tax Lien Docket Number 200214xxxx ("State Lien #1").

        This is not Plaintiff's tax lien.  Plaintiff has never had a tax lien

        filed against him.

f.      State Tax Lien Docket Number 200214xxxx ("State Lien #2").

        This is not Plaintiff's tax lien.  Plaintiff has never had a tax lien

        against him.

g.      Federal Tax Lien Docket Number 200401xxxx ("Federal Lien

        #1").  This is not Plaintiff's tax lien.  Plaintiff has never had a

        tax lien against him.

9.

Immediately, Plaintiff sent a dispute letter by return receipt requested to Defendant Trans Union disputing the following accounts reported inaccurately on Trans Union Report #1, informing Trans Union of the specific reason for the inaccuracy:

a.      Bank of America Account.  I have never had a revolving

        charge account with Bank of America.  This is not my

        account.

b.      FHB Account #2.  This account does not belong to me.  I

        live in Kona on the Island of Hawaii.  I have never been

        to the Kamehameha Hwy branch of FHB to open an

8

account.

c.    FHB Account #3.  This account does not belong to me.  I live in Kona on the Island of Hawaii.  I have never been to the Kamehameha Hwy branch of FHB to open an account.

d.    NCO Account.  This account does not belong to me. This account may belong to my father who has a similar first and last name as me.

e.    State Lien #1.  This tax lien does not belong to me.  It may belong to my father who has a similar name.

f.    State Lien #2.  This tax lien does not belong to me.  It may belong to my father who has a similar name.

g.    Federal Lien #1.  This tax lien does not belong to me.  It may belong to my father who has a similar name.

The dispute letter of June 28, 2006 was acknowledged as being received by Trans Union on July 3, 2006.

10.

On July 10, 2006, Plaintiff was hopeful that his credit was being accurately reported as a result of Trans Union being informed of the inaccuracies in its credit report.  Plaintiff wanted to re-finance the current mortgage on his home for debt

consolidation and to prepare financially to build the new O'hana home. In pursuit of such, Plaintiff attempted to qualify for a new loan with Home Capital, Inc. Co-owner Keith Brink had some prior health problems that interfered with his ability to continue paying the original mortgage and impacted his credit. Thus, it was Plaintiff's intent to re-finance the initial loan on the Holualoa property in his name only even though the lender processed an application for both Plaintiff and Keith Brink for a joint loan.

11.

Due to his good credit history, Plaintiff was alarmed to find out that Home Capital did not offer him the prevailing and advertised low rate of interest based on inaccurate information being reported on a First American CREDCO Instant Credit Merge Report dated July 10, 2006 ("CREDCO Report #1"). Consequently, Plaintiff did not accept the loan. The inaccuracies as reported to CREDCO by Trans Union and Equifax were as follows:

a.   Federal Tax Lien Docket # 200608xxxx ("Federal Lien #2) as reported by Equifax. This is not Plaintiff's tax lien. Plaintiff has never had a tax lien filed against him.

b.   State Lien #1 as reported by Trans Union. This is not Plaintiff's tax lien. Plaintiff has never had a tax lien filed against him.

c.    Federal Lien #1 as reported by Trans Union. This is not

Plaintiff's tax lien. Plaintiff has never had a tax lien filed

against him.

d.    NCO Account as reported by Trans Union. This is not

Plaintiff's account. Plaintiff has never held an account

with NCO Fin.

e.    Bank of America Account as reported by Equifax. This

is not Plaintiff's account.

f.    FHB Account #2 as reported by Trans Union. This is not

Plaintiff's account.

g.    Central Pacific Bank Account # 312320xxxx ("Central

Pacific Account") as reported by Trans Union. This is

not Plaintiff's account.

h.    FHB Account #3 as reported by Trans Union. This is not

Plaintiff's account.

i.    78 Mamalahoa HY #6588 as current address as reported

by Trans Union. This is not Plaintiff's current address.

12.

Defendant Experian reported Plaintiff's personal information accurately on

the  CREDCO  Report  #1  and  listed  Plaintiff's  CBUSASEARS  Account

11

#51210717xxxx (hereinafter "CBUSASEARS' Account") as a tradeline, but failed to report to CREDCO many other favorable credit accounts of Plaintiff in the credit history section of the report.  Experian failed to report on the following additional accounts of Plaintiff to CREDCO:

a. Citi/Shell #51883xxxx ("Citi/Shell Account")

b. FHB Account #100010007104xxxx

c. FHB Account #100010006700xxxx (Joint Account)

d. FairField Account #95210xxxx (Joint Account) ("FairField Account")

e. FHB #100010001533xxxx (Joint Account)

f. First Hawaiian Bank  #5320xxxx (Joint Account)

g. FHB #100010007175xxxx (Joint Account)

h. FHB Credit Card #54161160xxxx

(FHB Accounts "b"-"h" above are referred to collectively hereinafter as "Plaintiff's Experian missing accounts").

13.

As a result of the denial of prevailing and advertised interest rates at Home Capital Inc., Plaintiff did not accept the Home Capital loan and has suffered, and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to his reputation, invasion of privacy, and

emotional distress.

14.

On July 10, 2006, Plaintiff was hopeful that his credit inaccuracies were limited to reporting as provided to CREDCO and attempted to re-finance the Home Capital home loan by obtaining a loan from Countrywide Home Loans.   To Plaintiff's dismay, he was denied the low advertised interest rate offered by Countrywide Home Loans based on inaccurate information being reported on a LandSafe Credit Merge Report dated July 10, 2006 ("LandSafe Report #1"). The inaccuracies reported to LandSafe by Trans Union and Equifax were as follows:

a.      Federal Lien #2 as reported by Equifax.  This is not Plaintiff's tax lien.  Plaintiff has never had a tax lien filed against him.

b.      State Lien #1 as reported by Trans Union.  This is not Plaintiff's tax lien.  Plaintiff has never had a tax lien filed against him.

c.      State Lien #2 as reported by Trans Union.  This is not Plaintiff's tax lien.  Plaintiff has never had a tax lien filed against him.

d.      Federal Lien #1 as reported by Trans Union.  This is not Plaintiff's tax lien.  Plaintiff has never had a tax lien filed

13

against him.

e.      Bank of America Account as reported by Trans Union

        and Equifax.  This is not Plaintiff's account.

f.      FHB Account #2 as reported by Trans Union.  This is not

        Plaintiff's account.

g.      Central Pacific Account as reported by Trans Union.

        This is not Plaintiff's account.

h.      FHB Account #3 as reported by Trans Union.  This is not

        Plaintiff's account.

i.      78 Mamalahoa HY #6588 as reported by Trans Union as

        Plaintiff's current address.  This is not Plaintiff's current

        address.

15.

Experian again reported correctly to Landsafe that resulted in the
CBUSASEARS' Account and Citi/Shell Account appearing on LandSafe Report
#1.  Experian also provided a credit score for Plaintiff under the Experian/Fair,
Issac Model.  However, Experian did not report on any of Plaintiff's Experian
missing accounts to LandSafe.

16.

As a result of the denial of credit with Countrywide in July 2006, Plaintiff

has suffered, and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to his reputation, invasion of privacy, and emotional distress.

17.

On July 31, 2006, Trans Union issued the results of its investigation to Plaintiff's June 28, 2006 dispute of the Trans Union Report #1. Trans Union deleted the following accounts from Plaintiff's credit file as follows:

a.     NCO Account.

b.     FHB Account #2.

c.     Bank of America Account.

d.     FHB Account #3.

18.

Trans Union also verified, through an unidentified ""creditor" (subsequently identified as furnisher LexisNexis), the updated following inaccuracies as being accurate:

a.     State Lien #1.  Contractually liable debt.

b.     State Lien #2.  Contractually liable debt.

c.     Federal Lien #1.  Contractually liable debt.

19.

In addition to the investigation results, Trans Union supplied an updated

15

Credit Report #158086903 on July 31, 2006 ("Trans Union Report #2") which continued to report inaccuracies (having either failed to investigate Plaintiff's dispute or having allegedly verified as accurate the inaccurately reported information) on the following accounts:

a.    State Lien #1. This is not Plaintiff's tax lien. Plaintiff has never had a tax lien filed against him.

b.    State Lien #2. This is not Plaintiff's tax lien. Plaintiff has never had a tax lien filed against him.

c.    Federal Lien #1. This is not Plaintiff's tax lien. Plaintiff has never had a tax lien filed against him.

d.    Federal Lien #2. This is not Plaintiff's tax lien. Plaintiff has never had a tax lien filed against him.

20.

On August 3, 2006, Plaintiff continued efforts to refinance the Home Capital home loan as he was offered a lower interest rate loan and had increased equity in his home from 6 years of timely mortgage payments. Plaintiff obtained an online credit report from Experian #32223132117 ("Experian Report #1") directly to determine if Experian was reporting accurately. Experian reported correctly on the following accounts of Plaintiff:

a.    CBUSASEARS' Account

16

b.      Citi/Shell Account

21.

Experian again failed to report on Plaintiff's Experian missing accounts on Experian Report #1.   Experian also identified "Anna" as Plaintiff's spouse under the personal information section of Experian Report #1.   This is incorrect as "Anna" is Plaintiff's mother and Plaintiff does not have a spouse.

22.

On August 3, 2006, Plaintiff ordered a Trans Union Credit Report ("Trans Union Report #3) directly from Trans Union to compare with previous Trans Union reporting to resellers.   Plaintiff discovered the Trans Union Report #3 had the following inaccuracies:

a.      Federal Lien #2.  This is not Plaintiff's tax lien.  Plaintiff has never had a tax lien filed against him.

b.      Federal Lien #1.  This is not Plaintiff's tax lien.  Plaintiff has never had a tax lien filed against him.

c.      State Lien #1.  This is not Plaintiff's tax lien.  Plaintiff has never had a tax lien filed against him.

d.      State Lien #2.  This is not Plaintiff's tax lien.  Plaintiff has never had a tax lien filed against him.

23.

On August 3, 2006, Plaintiff was determined to ascertain which credit reporting agencies continued to include his father's State and Federal tax liens in his credit file. Plaintiff obtained a copy of his Equifax Credit Report # 6715771045 ("Equifax Report #1") directly from Equifax and discovered the following inaccuracies:

    a.    Bank of America Account. This is not Plaintiff's account.

    b.    Federal Lien #2. This is not Plaintiff's tax lien. Plaintiff has never had a tax lien filed against him.

24.

On or about August 5, 2006, Plaintiff sent a dispute letter to Defendant Equifax disputing the following accounts reported inaccurately on the Equifax Report #1 and informing Equifax of the specific reasons for the inaccuracies as follows:

    a.    Bank of America Account. I have never had a revolving charge account with Bank of America. Bank of America pulled out of Hawaii in the late 1990s and sold all of their branches to other financial institutions. My father and I have the same first and last name; maybe he opened an account with them by mail; but I did not.

    b.    Federal Lien #2. This account does not belong to me.

This account may belong to my father who has a similar

name and Social Security Number.  I have had no tax

liens, state or federal, ever filed against me.

25.

On August 13, 2006, Plaintiff received a response by letter from Equifax regarding Plaintiff's August 5, 2006 dispute of Equifax Report #1. Equifax requested proof of Plaintiff's identity by providing a Social Security Card and a driver's license with correct name and address.  Plaintiff provided Equifax with a copy of his Social Security Card and his State of Hawaii driver's license.

26.

On August 14, 2006, Plaintiff applied for a loan with Countrywide Home Loans to refinance the existing mortgage against his home.  Countrywide denied Plaintiff its lower advertised interest rate.  Countrywide informed Plaintiff that the lower interest rate could not be offered due to information being reported on Equifax Report #1 and LandSafe Credit Merge Report dated August 14, 2006 ("LandSafe Report #2").  Plaintiff's review of LandSafe Report #2 indicated it contained several inaccuracies as reported to LandSafe by Trans Union and Equifax as follows:

a.      Federal Lien #2 as reported by Trans Union and Equifax.

This is not Plaintiff's tax lien.  Plaintiff has never had a

tax lien filed against him.

19

b.      State Lien #1 as reported by Trans Union.  This is not

Plaintiff's tax lien.  Plaintiff has never had a tax lien filed

against him.

c.      State Lien #2 as reported by Trans Union.  This is not

Plaintiff's tax lien.  Plaintiff has never had a tax lien filed

against him.

d.      Federal Lien #1 as reported by Trans Union.  This is not

Plaintiff's tax lien.  Plaintiff has never had a tax lien filed

against him.

e.      Bank of America Account as reported by Equifax.  This

is not Plaintiff's account.

f.      Central Pacific Account as reported by Trans Union.

This is not Plaintiff's account.

27.

As a result of this denial based on inaccurate information, Plaintiff has

suffered, and continues to suffer, actual damages, including economic loss, denial

of credit, lost opportunity to receive credit, damage to his reputation, invasion of

privacy, and emotional distress.

28.

On August 23, 2006, Plaintiff received a copy of Plaintiff's Equifax

Investigation Report and an updated Equifax Credit Report with confirmation # 6229038502 ("Equifax Credit Report # 2") in response to Plaintiff's August 5, 2006 dispute.   Equifax informed Plaintiff of the results of its investigation and updated Plaintiff's credit file with inaccurate information as follows:

a.    Federal Lien #2.  This account was disputed on August 5, 2006.  Equifax responded to Plaintiff's dispute on August 23, 2006 with a statement that "Consumer Disputes – Reinvestigation in Process."

b.    Bank of America Account.  This account was disputed on August 5, 2006.  Equifax responded to Plaintiff's dispute with a statement that "Consumer Disputes – Reinvestigation in Progress."

29.

Equifax also again requested Plaintiff to submit a copy of his social security card, driver's license, and/or an official document to update his name.  By   August 24, 2006, Plaintiff became exasperated with prior reporting inaccuracies on his credit reports.   He was very concerned that the rising costs of credit and for construction in Hawaii would prevent him from obtaining credit sufficient to finance his plans to eventually build a new home.   Consequently, Plaintiff reluctantly accepted a Home Mortgage Loan for $290,000.00 at 6.625% with

Countrywide Home Loan to start debt consolidation in preparation to obtain financing for construction of the new O'hana home.  As a result of the denial of the lower interest rate on the loan, Plaintiff suffered, and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to his reputation, invasion of privacy, and emotional distress.

30.

On September 13, 2006, Plaintiff received a letter from Equifax dated August 31, 2006 indicating that Equifax was unable to locate a credit file for Plaintiff and again requesting information to verify Plaintiff's identification, social security number and address. The address Equifax wanted proof of was "78-7588 Mamalahoa HY, Holualoa HI. 96725", which is not Plaintiff's correct address. Plaintiff's address is 78-6588 Mamalahoa Hwy  HI. 96725.  Obviously, Plaintiff could not verify the incorrect address.

31.

Plaintiff signed up with TrueCredit to receive notification of changes in his credit reporting in an attempt to be put on alert when changes were occurring on his credit history so he could determine if the changes were accurate.  TrueCredit issued a notice dated September 14, 2006 (TrueCredit #1), which indicated Plaintiff's monthly credit updates as follows: 1) no new inquiries posted to your report; 2) no new accounts opened in your name; 3) no new accounts opened in

your name; 4) no address changes, and 5) no public records or any potentially negative items. The TrueCredit notice indicated that "no credit alerts have been triggered by changes to your credit report."

32.

On October 6, 2006, Plaintiff notified Trans Union by certified mail, return receipt requested that Trans Union reported several inaccuracies on Trans Union Report #3. Plaintiff notified Trans Union of the following disputes and explained the basis for the dispute as follows:

a. Federal Lien #2. This tax lien does not belong to Francis H.P. Keanaaina. This account may belong to Francis H.P. Keanaaina's father who has the same first and last name, but a different Social Security Number.

b. Federal Lien #1. This tax lien does not belong to Francis H.P. Keanaaina. This account may belong to Francis H.P. Keanaaina's father who has the same first and last name, but a different Social Security Number.

c. State Lien #1. This tax lien does not belong to Francis H.P. Keanaaina. This account may belong to Francis H.P. Keanaaina's father who has the same first and last name, but a different Social Security Number.

    d.    State Lien #2.  This tax lien does not belong to Francis H.P. Keanaaina.  This account may belong to Francis H.P. Keanaaina's father who has the same first and last name, but a different Social Security Number.

33.

On October 6, 2006, Plaintiff notified LandSafe by certified mail, return receipt requested that LandSafe reported several inaccuracies on LandSafe Report #2.  Plaintiff notified LandSafe of the following disputes and explained the basis for the dispute as follows:

    a.    Federal Lien #2 as reported by Trans Union.  This tax lien does not belong to Francis H.P. Keanaaina.  This account may belong to Francis H.P. Keanaaina's father who has the same first and last name, but a different Social Security Number.

    b.    Federal Lien #1 as reported by Trans Union.  This tax lien does not belong to Francis H.P. Keanaaina.  This account may belong to Francis H.P. Keanaaina's father who has the same first and last name, but a different Social Security Number.

    c.    State Lien #1 as reported by Trans Union.  This tax lien

24

does not belong to Francis H.P. Keanaaina. This account may belong to Francis H.P. Keanaaina's father who has the same first and last name, but a different Social Security Number.

d.     State Lien #2 as reported by Trans Union. This tax lien does not belong to Francis H.P. Keanaaina. This account may belong to Francis H.P. Keanaaina's father who has the same first and last name, but a different Social Security Number.

e.     Bank of America Account as reported by Equifax. This account does not belong to Francis H.P. Keanaaina. This account may belong to Francis H.P. Keanaaina's father who has the same first and last name, but a different Social Security Number.

34.

On October 6, 2006, Plaintiff notified CREDCO by certified mail, return receipt requested that CREDCO reported several inaccuracies on CREDCO Report #1. Plaintiff notified CREDCO of the following disputes and explained the basis for the dispute as follows:

a.     Federal Lien #2 as reported by Trans Union. This tax

lien does not belong to Francis H.P. Keanaaina. This
account may belong to Francis H.P. Keanaaina's father
who has the same first and last name, but a different
Social Security Number.

(Federal Lien #1 was also disputed, but was inadvertently
left out of the dispute letter).

b.   State Lien #1 as reported by Trans Union. This tax lien
does not belong to Francis H.P. Keanaaina. This account
may belong to Francis H.P. Keanaaina's father who has
the same first and last name, but a different Social
Security Number. (State Lien #2 was disputed in the
letter also, but did not appear on CREDCO Report #1).

c.   Bank of America Account, as reported by Equifax. This
account does not belong to Francis H.P. Keanaaina. This
account may belong to Francis H.P. Keanaaina's father who has
the same first and last name, but a different Social Security
Number.

d.   FHB Account #2 as reported by Trans Union. This account
does not belong to Francis H.P. Keanaaina. This account may
belong to Francis H.P. Keanaaina's father who has the same

first and last name, but a different Social Security Number.

e.      FHB Account #3 as reported by Trans Union.  This

account does not belong to Francis H.P. Keanaaina.  This

account may belong to Francis H.P. Keanaaina's father

who has the same first and last name, but a different

Social Security Number.

f.      NCO Account as reported by Trans Union.  This account

does not belong to Francis H.P. Keanaaina.  This account

may belong to Francis H.P. Keanaaina's father who has

the same first and last name, but a different Social

Security Number.

35.

On October 6, 2006, Plaintiff notified Bank of America by certified mail, return receipt requested that Bank of America reported an inaccuracy on Equifax Report #2 dated August 23, 2006.  Plaintiff notified Bank of America of the following dispute and explained the basis for the dispute as follows:

a.      Bank of America Account (as reported by Equifax as

disputed).  This account does not belong to Francis H.P.

Keanaaina.  This account may belong to Francis H.P.

Keanaaina's father who has the same first and last name,

27

but a different Social Security Number.

36.

On October 6, 2006, Plaintiff notified Equifax by certified mail, return receipt requested, that Equifax reported several inaccuracies on Equifax Report #2. Plaintiff notified Equifax of the following disputes and explained the basis for the dispute as follows:

a.   Federal Lien #2.  This tax lien does not belong to Francis H.P. Keanaaina.  This account may belong to Francis H.P. Keanaaina's father who has the same first and last name, but a different Social Security Number.

b.   Bank of America Account.  This account does not belong to Francis H.P. Keanaaina.  This account may belong to Francis H.P. Keanaaina's father who has the same first and last name, but a different Social Security Number.

37.

On October 13, 2006, Trans Union responded by way of letter to Plaintiff's dispute of October 6, 2006 regarding Federal Lien #1, State Lien #1 and State Lien #2 accusing Plaintiff of making a frivolous dispute and flatly refused to reinvestigate the dispute.  These accounts were inaccurately reported on Trans Union Report #1 dated August 3, 2006.   These accounts were disputed on June 28, 2006 as not being

Plaintiff's tax liens. Trans Union responded that the tax liens had been verified through a "creditor" (subsequently identified as furnisher LexisNexis) as belonging to Plaintiff. The tax liens were again reported by Trans Union on Trans Union Report #2 over Plaintiff's dispute. Plaintiff disputed these accounts again on October 6, 2006 by way of certified mail, return receipt requested.

38.

On October 18, 2006 Trans Union further responded to Plaintiff's dispute of October 6, 2006 concerning Trans Union #1 regarding State Lien #1 and State Lien #2 stating: "our records show that your "creditor(s)" previously verified as accurate," accusing Plaintiff of making a frivolous dispute and flatly refusing to reinvestigate the dispute.

39.

On October 19, 2006, Equifax responded by way of letter to Plaintiff's dispute of October 6, 2006 informing Plaintiff of the results of its investigation ("Equifax Report #3") as follows:

a.   Identification Information. Please submit a copy of your social security card, driver's license and/or an official document to update your name.

b.   Current address. The current address has been added/updated per the information you have supplied.

29

    c.      Federal Lien #2 is not currently reporting on your credit file.

    d.      Bank of America Account is not currently reporting on your

             credit report.

40.

On November 1, 2006, Trans Union further responded to Plaintiff's dispute of October 6, 2006 informing Plaintiff of the results of its investigation ("Trans Union Report #4") as follows:

    a.      State Lien #1.  Previously verified.

    b.      State Lien #2.  Previously verified.

    c.      Federal Lien #1.  Previously verified.

    d.      Federal Lien #2.  New Information Below.

             Contractually liable debt.

    e.      State Lien #1.  Previously verified.

    f.      State Lien #2.  Previously verified.

41.

Trans Union stated that the tax liens were verified as belonging to Plaintiff through an unidentified "creditor" (subsequently identified as furnisher LexisNexis) which furnished the information to Trans Union. It appears in Trans Union Report #4 that State Liens #1 and #2 were incorrectly verified as Plaintiff's account on two occasions.

42.

Trans Union also reported the following new, inaccurate information:

    a.    Sears/CBSD Account # 51210717094xxxx ("Sears Account");

Balance: $6,031.00. This account was closed by Plaintiff prior to

publication of Trans Union Report #4.

43.

On November 15, 2006, Plaintiff attempted to obtain a consumer loan from

Hawaii Community Federal Credit Union to purchase a new car. Hawaii Community

Federal Credit Union denied the application and issued an Adverse Action Notice of

November 15, 2006 which states, in pertinent part, that the credit was denied to

Plaintiff due to: 1) delinquent past or present credit obligations with others and; 2)

garnishment, attachment, foreclosure, collection action, repossession or judgment,

reported by Trans Union. As a result of this denial, Plaintiff has suffered, and

continues to suffer, actual damages, including economic loss, denial of credit, lost

opportunity to receive credit, damage to his reputation, invasion of privacy, and

emotional distress.

44.

On November 18, 2006, Plaintiff attempted to obtain a home equity loan from

Countrywide Home Loans to start building a second family home for his O'hana, as

Plaintiff's present home was not large enough to accommodate his family.

Countrywide offered a high interest rate of 9.00% and denied Plaintiff a lower advertised fixed interest rate based on inaccurate information being reported by Defendants Trans Union and Equifax on a LandSafe Credit Merge Report (LandSafe Report #3) dated November 20, 2006.  As a result of this denial, Plaintiff has suffered, and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to his reputation, invasion of privacy, and emotional distress.

45.

On November 20, 2006, Plaintiff discovered the following inaccurately reported accounts in his LandSafe Report #3 based on information reported by Equifax:

     a.     Social Security Number 575-28-xxxx.  This is not Plaintiff's Social Security Number but appears to belong to Plaintiff's father.  Plaintiff's Social Security Number is 575-27-xxxx.

     b.     FHB Account #3.   This is not Plaintiff's account but may be his father's.

46.

On November 20, 2006, Plaintiff discovered the following incorrect addresses as presented in LandSafe Report #3 based on information reported by Defendant Experian:

a.    Address: 78-9588 Mamalahoa Highway, Holualoa,

Hawaii 96725. This is not Plaintiff's address, Plaintiff's

address is 78-6588 Mamalahoa Highway, Holualoa,

Hawaii 96725.

b.    Address: 78-65 Mamalahoa Highway, Holualoa, Hawaii

96725. This is not Plaintiff's address, Plaintiff's address

is 78-6588 Mamalahoa Highway, Holualoa, Hawaii

96725.

47.

Experian did not report Plaintiff's Experian missing accounts to LandSafe, but

continued to report correctly on the following two tradelines:

a.    CBUSASEARS' Account

b.    Citi/Shell Account

48.

On November 20, 2006, Plaintiff discovered the following inaccurately reported

accounts in his LandSafe Report #3 as reported by Trans Union:

a.    State Lien #1. This is not Plaintiff's tax lien.

b.    State Lien #2. This is not Plaintiff's tax lien.

c.    Federal Lien #1. This is not Plaintiff's tax lien.

d.    Federal Lien #2. This is not Plaintiff's tax lien.

33

e.    Address: 78 Mamalahoa Highway 6588, HoLualoa, Hawaii
96725.  This is not Plaintiff's address.

49.

On November 29, 2006, CREDCO responded by way of letter to Plaintiff's dispute
of October 6, 2006 informing Plaintiff of the results of its investigation ("CREDCO
Report #2") as follows:

a.    FHB Account #2 as reported by Trans Union.  Deleted; Failed
to respond.

b.    NCO Account as reported by Trans Union.  Deleted; Failed to
respond.

c.    Bank of America Account as reported by Equifax.  Deleted;
Failed to respond.

d.    FHB Account #3 as reported by Trans Union.  Deleted; Failed
to respond.

e.    Federal Lien #2 as reported by Trans Union.  Deleted; Failed to
respond.

f.    State Lien #1 as reported by Trans Union.  Deleted; Failed to
respond.

g.    State Lien #2 as reported by Trans Union.  Deleted; Failed to
respond.

34

50.

By December 6, 2006, despite the fact that two months had passed since Plaintiff had mailed a dispute letter to LandSafe on October 6th, 2006 regarding inaccuracies in Landsafe Report #2 (reported on August 14, 2006 and repulled same report on August 16, 2006), Landsafe had failed to respond to the dispute letter.

51.

On December 15, 2006, Plaintiff notified Equifax by certified mail return receipt requested that Equifax reported several inaccuracies on LandSafe Report #3 dated November 20, 2006. Plaintiff notified Equifax of the disputes and explained the basis for the disputes as follows:

a. Social Security Number. The report lists Social Security Number 575-28-xxxx. This is my father's Social Security Number.

b. FHB Account #2. This account does not belong to Francis H.P. Keanaaina. This account may belong to Francis H.P. Keanaaina's father who has the same first and last name, but a different Social Security Number.

c. FHB Account #3. This account does not belong to Francis H.P. Keanaaina. This account may belong to Francis H.P. Keanaaina's father who has the same first

and last name, but a different Social Security Number.

52.

On December 15, 2006, Plaintiff notified Trans Union by certified mail return receipt requested that Trans Union reported several inaccuracies on Trans Union Report #4.  Plaintiff notified Trans Union of the following disputes and explained the basis for the disputes as follows:

      a.      The report lists 78 Mamalahoa HY 6588, Holualoa, HI 96725 as my address.  This is incorrect.  My correct address is 78-6588 Mamalahoa Highway, Holualoa, HI 96725.

      b.      Federal Lien #2.  This tax lien does not belong to me, Francis H.P. Keanaaina.  This account may belong to Francis H.P. Keanaaina's father who has the same first and last name, but a different Social Security Number.  This item remains over my dispute of October 6, 2006.  The report states that I am contractually liable for this debt.  How am I contractually liable for the debt of my mother and father?

      c.      Federal Lien #1.  This tax lien does not belong to me, Francis H.P. Keanaaina.  This account may belong to

Francis H.P. Keanaaina's father who has the same first and last name, but a different Social Security Number. This item remains over my dispute of October 6, 2006. The report states that I am contractually liable for this debt. How am I contractually liable for the debt of my mother and father?

d.   State Lien #1.  This tax lien does not belong to me, Francis H.P. Keanaaina.  This account may belong to Francis H.P. Keanaaina's father who has the same first and last name, but a different Social Security Number. This item remains over my dispute of October 6, 2006. The report states that I am contractually liable for this debt.  How am I contractually liable for the debt of my mother and father?

e.   State Lien #2.  This tax lien does not belong to me, Francis H.P. Keanaaina.  This account may belong to Francis H.P. Keanaaina's father who has the same first and last name, but a different Social Security Number. This item remains over my dispute of October 6, 2006. The report states that I am contractually liable for this

debt.  How am I contractually liable for the debt of my

mother and father?

    f.    Sears Account.  This account has been paid in full and closed at

my request.

53.

On December 15, 2006, Plaintiff notified Trans Union, by certified mail return

receipt requested, that Trans Union reported several inaccuracies on LandSafe Report

#3.  Plaintiff notified Trans Union of the following disputes and explained the basis

for the disputes as follows:

    a.    Address.  The report lists 78 Mamalahoa Highway 6588,

Holualoa, Hawaii 96725 as my address. This is not my

address.   My correct address is 78-6588 Mamalahoa

Highway, Holualoa, Hawaii 96725.

    b.    Federal Lien #2.  This tax lien does not belong to me,

Francis H.P. Keanaaina.  This account may belong to

Francis H.P. Keanaaina's father who has the same first

and last name, but a different Social Security Number.

This item remains over my dispute of October 6, 2006.

    c.    Federal Lien #1.  This tax lien does not belong to Francis

H.P. Keanaaina.  This account may belong to Francis

38

H.P. Keanaaina's father who has the same first and last name, but a different Social Security Number. This items remains over my dispute of October 6, 2006.

d.      State Lien #1. This tax lien does not belong to Francis H.P. Keanaaina. This account may belong to Francis H.P. Keanaaina's father who has the same first and last name, but a different Social Security Number. This items remains over my dispute of October 6, 2006.

e.      State Lien #2. This tax lien does not belong to Francis H.P. Keanaaina. This account may belong to Francis H.P. Keanaaina's father who has the same first and last name, but a different Social Security Number. This items remains over my dispute of October 6, 2006.

54.

On December 15, 2006, Plaintiff notified LandSafe, by certified mail return receipt requested, that LandSafe reported several inaccuracies on LandSafe Report #3. Plaintiff notified LandSafe of the following disputes and explained the basis for the disputes as follows:

a.      Federal Lien #2 as reported by Trans Union. This tax lien does not belong to Francis H.P. Keanaaina. This

39

account may belong to Francis H.P. Keanaaina's father who has the same first and last name, but a different Social Security Number.

b.     Federal Lien #1 as reported by Trans Union.  This tax lien does not belong to Francis H.P. Keanaaina.  This account may belong to Francis H.P. Keanaaina's father who has the same first and last name, but a different Social Security Number.

c.     State Lien #1 as reported by Trans Union.  This tax lien does not belong to Francis H.P. Keanaaina.  This account may belong to Francis H.P. Keanaaina's father who has the same first and last name, but a different Social Security Number.

d.     State Lien #2 as reported by Trans Union.  This tax lien does not belong to Francis H.P. Keanaaina.  This account may belong to Francis H.P. Keanaaina's father who has the same first and last name, but a different Social Security Number.

e.     FHB Account #2 as reported by Equifax.  This account does not belong to Francis H.P. Keanaaina.  This account

40

may belong to Francis H.P. Keanaaina's father who has

the same first and last name, but a different Social

Security Number.

f.    FHB Account #3 as reported by Equifax.  This account

does not belong to Francis H.P. Keanaaina.  This account

may belong to Francis H.P. Keanaaina's father who has

the same first and last name, but a different Social

Security Number.

g.    Social Security Number.  The Social Security Number

being reported by Equifax is incorrect.  The report lists

Social Security Number 575-28-xxxx.  This is my

father's Social Security Number.

55.

On December 15, 2006, Plaintiff notified Defendant Experian by certified mail

return receipt requested that Defendant Experian provided an inaccurate present

address for Plaintiff on CREDCO Report #2. Plaintiff notified Defendant Experian of

the following disputed information and explained the basis for the dispute as follows:

a.    Address.  The report lists 78-9588 Mamalahoa Highway,

Holualoa, Hawaii 96725 as my address.  This is not my address.

I have never lived at this address.  My correct address is 78-

41

6588 Mamalahoa, Highway, Holualoa, Hawaii 96725.

56.

On December 29, 2006, Trans Union responded to Plaintiff's dispute of Trans Union Report #4 dated December 15, 2006 regarding Federal Lien #2, State Lien #1 and State Lien #2; Trans Union accusing Plaintiff of making a frivolous dispute and flatly refusing to reinvestigate the dispute explaining that the accounts <u>have</u> been previously verified by your "creditor(s)."

57.

On December 29, 2006 Trans Union further responded to Plaintiff's dispute of December 15, 2006 regarding the incorrect reporting of his home address in Trans Union Report #4. Trans Union stated that "Due to programming restrictions we are unable to input the address as you requested. . .   We are unable to maintain an address on your credit file report without a house number."

58.

On December 29, 2006 LandSafe responded to Plaintiff's dispute of December 15, 2006 to LandSafe Report #4 requesting that Plaintiff provide his date of birth and 2 forms of identification.

59.

On December 30, 2006 Equifax responded to Plaintiff's dispute of December 15, 2006 regarding inaccurate information provided in CREDCO Report #2 and

LandSafe Report #3 requesting that Plaintiff provide verification of his identity.

60.

On January 2, 2007 Equifax responded to Plaintiff's disputes to LandSafe Report #2 and CRECDO Report #1 of October 6, 2006, as follows:

a.    We have reviewed the former address.  The disputed address has been deleted.

b.    SSN 575-28-xxxx is not currently reporting on your credit file.

c.    FHB Account #2 is not currently reporting on your credit file.

d.    FHB Account #3 is not currently reporting on your credit file.

61.

It should be noted that these disputes were received by Equifax from CREDCO on November 29, 2006 and from LandSafe on November 20, 2006, respectively.

62.

On January 4, 2007, LandSafe responded to Plaintiff's dispute of December 15, 2006 to LandSafe Report #4, informing Plaintiff that due to not receiving a copy of Plaintiff's identification documents LandSafe submitted disputes on trade lines only and was unable to submit disputes regarding personal information.

63.

Countrywide Homes Loans obtained a LandSafe Credit Merge Report repulled on January 5, 2007 (LandSafe Report #4, a repulled LandSafe Report #3 dated

43

11/20/06) to determine Plaintiff's credit risk for repayment of a possible loan to build the O'hana home and to determine if Plaintiff might qualify for a new fixed rate loan. Plaintiff received a copy of LandSafe Report #4 from Countrywide Home Loans. Plaintiff discovered the following inaccurately reported information:

a.      Social Security Number 575-28-xxxx was being reported by Equifax.  This is not Plaintiff's Social Security Number which is 575-27-xxxx.  The reported Social Security Number is Plaintiff's father's Social Security Number.

b.      State Lien #1 was being reported by Trans Union.  This tax lien does not belong to Plaintiff.  It may belong to Plaintiff's father who has the same first and last name, but a different Social Security Number.

c.      State Lien #2 was being reported by Trans Union.  This tax lien does not belong to Plaintiff.  It may belong to Plaintiff's father who has the same first and last name, but a different Social Security Number.

d.      Federal Lien #1 was being reported by Trans Union.  This tax lien does not belong to Plaintiff.  It may belong to Plaintiff's father who has the same first and last name, but a different Social Security Number.

44

e.   Federal Lien #2 was being reported by Trans Union. This tax lien does not belong to Plaintiff. It may belong to Plaintiff's father who has the same first and last name, but a different Social Security Number.

f.   FHB Account #2 was being reported by Equifax. This account does not belong to Plaintiff. It may belong to Plaintiff's father who has the same first and last name, but a different Social Security Number.

g.   FHB Account #3 was being reported by Equifax. This account does not belong to Plaintiff. It may belong to Plaintiff's father who has the same first and last name, but a different Social Security Number.

h.   Central Pacific Account was being reported by Trans Union. This account does not belong to Plaintiff. It may belong to Plaintiff's father who has the same first and last name, but a different Social Security Number.

i.   Address: 78-9588 Mamalahoa Hwy, Holualoa, HI. 96725 was incorrectly being reported by Experian. Plaintiff's correct address is 78-6588 Mamalahoa Hwy, Holualoa, HI. 96725.

j.   Address: P.O. Box 151, Kailua Kona, HI. 96745 was

incorrectly being reported by Equifax, which is Plaintiff's

father's address.   Plaintiff's correct address is 78-6588

Mamalahoa Hwy, Holualoa, HI. 96725.

k.      Address: 78 Mamalahoa Hwy 6588, Holualoa, HI. 96725 was

incorrectly being reported by Trans Union. Plaintiff's correct

address is 78-6588 Mamalahoa Hwy, Holualoa, HI. 96725.

64.

On January 5, 2007 Trans Union responded to Plaintiff's December 15, 2006

dispute regarding Trans Union Report #4, stating that Trans Union could not process

Plaintiff's dispute without verification of Plaintiff's date of birth.

65.

On January 5, 2007, Trans Union responded to Plaintiff's December 15, 2006

dispute regarding State Lien #1, State Lien #2, Federal Lien #1 and Federal Tax Lien

#2 in Trans Union Report #4 and LandSafe Report #3, accusing Plaintiff of making

frivolous disputes and flatly refusing to reinvestigate the disputes since the accounts

had been previously verified by an unidentified "creditor(s)" (subsequently

identified as Defendant LexisNexis).

66.

On January 11, 2007, Plaintiff responded to Equifax's December 30, 2006

request for validation of his identity.  Plaintiff sent Equifax a copy of his driver's

license, state identification card and Social Security Card.  This was at least the third time that Plaintiff had supplied this same information to Equifax.

67.

On January 12, 2007 Trans Union responded to Plaintiff's December 15, 2006 dispute letter regarding Trans Union Report #4, as follows:

a.      Sears Account.  New Information Below.  Account closed by consumer.

b.      State Lien #1.  Previously verified.

c.      State Lien #2.  Previously verified.

d.      Federal Lien #2.  Previously verified.

e.      Federal Lien #1.  Previously verified.

68.

Trans Union again informed Plaintiff that the reporting on the tax liens had been verified through an unidentified "creditor" (subsequently identified as furnisher Defendants LexisNexis).

69.

Plaintiff found the following additional inaccurately reported information on the Trans Union Report of January 12, 2007 ("Trans Union Report #5") which accompanied the January 12, 2007 Trans Union investigation, as follows:

a. Central Pacific Account.  This account does not belong to Plaintiff.

47

This account belongs to Plaintiff's father who has the same first and last name, but a different Social Security Number.

70.

On January 17, 2007, LandSafe responded to Plaintiff's December 15, 2006 dispute regarding the account reported by Equifax and enclosed a copy of Equifax's reinvestigation results ("Equifax Report #5"). Equifax responded to LandSafe's dispute as follows:

    a.    FHB Account #2 - Equifax verified that this item belongs to you. This account does not belong to Plaintiff.

    b.    FHB Account #3 - This item has been deleted from the credit file.

71.

Plaintiff found the following additional inaccurately reported information on the Equifax reinvestigation results:

    a.    Social Security Number 575-28-xxxx. This is not Plaintiff's Social Security Number. This is Plaintiff's father's Social Security Number.

    b.    Central Pacific Account. This account does not belong to Plaintiff. This account belongs to Plaintiff's father who has the same first and last name, but a different Social

48

Security Number.

c.    FHB Account #2.  This account does not belong to

Plaintiff.  This account belongs to Plaintiff's father who

has the same first and last name, but a different Social

Security Number.

72.

On January 17, 2007 Equifax responded to Plaintiff's December 15, 2006

dispute and enclosed a copy of Equifax's reinvestigation results dated January 13,

2007 ("Equifax Report #6").  Equifax responded to Plaintiff's dispute as follows:

a.    We have reviewed the identification information.  The results are:

Your name has been updated.

73.

Plaintiff was very concerned that potential lenders were receiving different and

inconsistent credit reports upon which credit, as well as interest rates were being

determined.

74.

On January 18, 2007 Equifax sent Plaintiff notification that a fraud alert had

been placed on his Equifax credit file.

75.

On January 18, 2007 Trans Union sent Plaintiff a request for proof of his

49

address and notifying him of the ability to place a fraud alert on his Trans Union credit file.

76.

On January 18, 2007, Plaintiff received notice from Experian that it had added an Initial Security Alert to his credit files as requested by "one or more nationwide consumer credit reporting companies."

77.

Also, in January 2007, Countrywide responded to Plaintiff's application for a Home Equity Loan (#15712xxxx) to build the O'hana home.  The loan officer at Countrywide inform Plaintiff that the lower "preferred customer" "A-Paper" fixed rate was not available to Plaintiff due to low credit scores reported by Trans Union, Experian and Equifax, as reflected in the Notice to the Home Loan Applicant dated January 5, 2007 from Countrywide Home Loans, Inc. re: Loan #15712xxxx.  As indicated in the notice, Trans Union was reporting a low credit score due to:

    a.      Derogatory Public Record or Collection filed.

    b.      Proportion of balances to credit limits it too high.

    c.      Length of time since derogatory Public Record or Collection.

    d.      Time since delinquency is too recent or unknown.

    e.      In addition to the factors listed above, the number of inquiries

on the consumer's credit file was adversely affecting Plaintiff's

credit score.

78.

The Notice to Home Loan Applicant dated January 5, 2007 also indicated

that Experian was reporting a low credit score due to:

a.    Proportion of balances to credit limit is too high.

b.    Too many inquiries last 12 months

c.    Amount owed on accounts is too high.

d.    Length of time accounts have been established.

Equifax was reporting:

e.    Number of accounts with delinquency.

f.    Time since delinquency is too recent.

79.

Thus, Plaintiff became aware that the Defendants CRAs' were still

inaccurately reporting his personal information and credit history.

80.

In February 2007, Countrywide formally denied Plaintiff the "advertised

preferred customer rate" offered on the HELOC based on information contained in

LandSafe Credit Merge Report which was repulled on January 5, 2007 (LandSafe

Report #4, a repulled LandSafe Report #3 dated 11/20/06). Plaintiff was only able to

qualify for a much higher interest rate (9%) on a HELOC adjustable rate mortgage for the sum of $190,000.00. Plaintiff accepted this loan in order to commence construction of the O'hana home.

81.

As a result of the denial of a fixed rate loan and the "advertised preferred customer rate", Plaintiff has suffered, and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to his reputation, invasion of privacy and emotional distress.

82.

On February 16, 2007 Experian notified Plaintiff in response to Plaintiff's disputes of December 15, 2006 (concerning CREDCO Report #2 and LandSafe Report #3) that it was presently unable to access Plaintiff's credit report using the identification information Plaintiff provided.

83.

On April 4, 2007, Plaintiff received a solicitation from Countrywide Home Loans for a lower interest rate to refinance his existing loans, indicating that Plaintiff might qualify for a new loan with 30 yr. fixed rate at 5.875 (6.144% APR).

84.

In April 2007, Plaintiff opened up a joint checking account with American Saving Bank in Kona. On the same day Plaintiff applied for a new Visa Credit card

with a $10,000 limit.  Plaintiff wanted a credit card that had a lower interest rate to use for business travel.  About a week after applying for the credit card, Plaintiff received an Adverse Action notification from American Savings.  Plaintiff's credit capacity and ability to obtain any credit card at a fair interest rate with any local financial institution was not available.

### 85.

Credit cards have become a necessity in our culture you cannot rent a car or stay at a hotel without one. As Plaintiff <u>must</u> travel frequently as part of his business, this was a devastating limitation and restriction on his business and travel, let alone his everyday business activities.

### 86.

On April 16, 2007, Plaintiff received a LandSafe Consumer Response dated April 12, 2007 in response to Plaintiff's prior disputes regarding Plaintiff's parents' state and federal tax liens being reported by Trans Union to LandSafe. LandSafe informed Plaintiff that it was a mortgage report reseller and could not influence the outcome of Consumer Reporting Agencies' reinvestigations and if Plaintiff had questions or disagree with the results of the reinvestigation to contact Trans Union directly.

### 87.

In the April 12, 2007 response, LandSafe provided a credit report from Trans

Union dated two months earlier, January 12, 2007 (Trans Union Report #6). Trans Union Report #6 again indicated that Trans Union's "creditor" had verified the reporting regarding Plaintiff's father's tax liens and provided the Bureau of Conveyance Document Numbers for the State Tax Lien #1 and #2 and Federal tax liens #1 and #2. This verification continued to be inaccurate as could have easily been determined by reviewing the recorded documents. The inaccuracies were as follows:

    a.    State Tax Liens #1 and #2 are not the tax debt of Plaintiff.  Plaintiff's Social Security Number is 575-27-xxxx, the liens state on the first page that the debtor taxpayer's Social Security Number is 575-28-xxxx; this appears to be Plaintiff's father's Social Security Number.

    b.    The address: P.O. Box 151, Kailua Kona, is not Plaintiff's address. Plaintiff's address is 78-6588 Mamalahoa.

    c.    The debtor taxpayers on the tax liens are "Francis and Anna K. Keanaaina."  This is not Plaintiff, but his parents.

88.

On April 19, 2007, First Hawaiian Bank confirmed directly to Plaintiff that FHB Account #2 and FHB Account #3 did not belong to Plaintiff.

54

89.

On May 23, 2007, First Hawaiian Bank sent a letter to Equifax, Experian and
Trans Union via-e-Oscar, instructing them to delete from their records the tradelines
with respect to the FHB Account #2 and FHB Account #3 from the credit profile of
Plaintiff. A notice for each account was sent to Defendants CRAs. Consequently,
Plaintiff was optimistic that some positive forward movement was being taken in
regards to the accuracy of his credit reports and that his father's FHB accounts would
no longer be appearing on his credit reports.

90.

By June 2007, it was apparent to Plaintiff that the construction costs for the
O'hana Home would far exceed the budget due to increases in construction costs
during the time Plaintiff was delayed in obtaining a loan consistent with his credit
standing. If Plaintiff had not been delayed in obtaining re-financing of the mortgage
and in obtaining the HELCO loan due to credit reporting inaccuracies the construction
on the O'hana home would have been already completed.

91.

On June 6, 2007, Plaintiff contacted Countrywide Full Spectrum Lending to see
if he could obtain additional financing to finish building the O'hana home. Plaintiff
was very anxious and concerned that a run of his credit report would be frustrating,
embarrassing and again indicate that he was a "dead beat" and a bad credit risk.

Countrywide represented that the current loan rates were fluctuating between 5.75%

and 6.25%. Plaintiff provided his social security number and date of birth to have a

credit report obtained.

92.

On June 6, 2007, Countrywide informed Plaintiff that LandSafe issued a

LandSafe Credit Merge Report  ("LandSafe Report #5") to present his credit status.

Countrywide further indicated that LandSafe Report #5 appeared to be merged with

Plaintiff's father's credit information.  In addition, Countrywide informed Plaintiff

that Experian was now not reporting a credit score due to "a Model Exclusion

Criteria."  Experian's report was identical to that for Plaintiff in the past and Experian

was still reporting CBUSA/ SEARS' Account and Citi/Shell Account correctly.

However, Experian somehow now concluded that Plaintiff did not have sufficient

credit to warrant a credit score.  Experian also continued to fail to report Plaintiff's

Experian missing accounts and Plaintiff's mortgage and HELOC loans with

Countrywide.

93.

Countrywide  informed  Plaintiff  that  it  was  Countrywide's  policy  that

Countrywide would not process the loan paper work without an Experian Credit score.

Countrywide told Plaintiff to call Experian "to verify the name and addresses that they

have in their system."

56

94.

On June 7, 2007, Plaintiff became aware of the following reported inaccuracies reported in the LandSafe Report #5 dated June 7, 2007 by Trans Union and Equifax:

a.      Federal Lien #1 as reported by Trans Union.  This is incorrect. This tax lien does not belong to Francis H. P. Keanaaina. This account may belong to Francis H. P. Keanaaina's father who has the same first and last name, but a different Social Security Number.  This item remains over Plaintiff's dispute of December 15, 2006.

b.      State Lien #1 as reported by Tran Union.  This is incorrect. This tax lien does not belong to Francis H. P. Keanaaina.  This account may belong to Francis H. P. Keanaaina's father who has the same first and last name, but a different Social Security Number.  This item remains over Plaintiff's dispute of December 15, 2006.

c.      State Lien #2 as reported by Trans Union.  This is incorrect. This tax lien does not belong to Francis H.

P. Keanaaina.  This account may belong to Francis H. P. Keanaaina's father who has the same first and last name, but a different Social Security Number.  This item remains over Plaintiff's dispute of December 15, 2006.

d.   Social Security Number 575-28-xxxx reported by Trans Union. This is incorrect. Plaintiff's Social Security Number is 575-27-xxxx and is so stated on the line just above the incorrect Social Security Number.

e.   Name: Keanaaina, Francis reported by Trans Union. This is incorrect.  Plaintiff's name is Francis H. P. Keanaaina. Francis Keanaaina is Plaintiff's father's name.

f.   Date of Birth 11/08/1930 (age 76) as reported by Equifax. This is incorrect.  Plaintiff's birth date is 5/16/68 (age 39)

g.   AKA Information, Keana, Francis, HenrPohukai as reported by Trans Union.  This is incorrect.

58

Plaintiff's full name is Francis Henry Pohukaina Keanaaina.

95.

In June 2007, due to Plaintiff's difficulties in obtaining additional financing with Countrywide as a result of the inaccurate credit scores being reported and the lack of credit score from Experian, Countrywide requested updated credit reports several times in an effort to obtain correct information upon which to determine credit terms and loan amount. Creditors' repeated requests for credit information was also a factor which contributed to Plaintiff receiving a lower credit score.

96.

In June 2007, Plaintiff could not determine what was causing "a model exclusion criteria" with Experian which prevented Experian from providing a credit score to Countrywide.

97.

Countrywide stated that without Experian reporting, Countrywide would be forced to use the lower of the two credit scores reported between Equifax (720) and Trans Union (664).   Consequently, it was clear that Plaintiff could not get an appropriate loan with Countrywide, or if one were offered it would be a "Sub-Prime" mortgage and at a much higher interest rate due to his credit reporting problems.

98.

Countrywide recommended to Plaintiff to "shop around" in the lending market to see if there was anyone who might be willing to do a cash out and refinance the mortgage and HELOC loans with Countrywide.   Countrywide again informed Plaintiff that they only used LandSafe reseller reports for its loans.  Plaintiff contacted Lending Tree.Com to try to find an appropriate lender that may not use LandSafe reports for loan qualification. Plaintiff received many email solicitations which all required separate credit reports inquiries and applications to be filled out.  Therefore, only a couple of potential lenders were selected in regards to applying for a loan.

99.

In mid June 2007, Plaintiff contacted "Guaranteed Rate, Inc." for a loan to finish construction of the O'hana home.  The loan process involved several weeks of credit report inquiries, written explanations of negative items being reported on the credit report, complete new loan application information, identity proof, and an expensive new appraisal ($677.00) of the Holualoa property/O'hana home. Guaranteed Rate also used LandSafe Credit Merge Reports for their lending purposes. The Underwriter's at Guaranteed Rate approved their end of the loan and were ready to submit to a lender of their choice.  IndyMac was their choice for the primary loan and Wells Fargo for a new Home Equity Loan.  Guaranteed Rate, Inc. stated it thought it could provide an interest rate around 6.8%. Plaintiff waited for the loan papers.

100.

On June 21, 2007, LandSafe admitted that it had received a dispute from Plaintiff dated October 6, 2006, and that LandSafe did not respond to the dispute. LandSafe further admitted that it failed to investigate the dispute of October 6, 2006 relating to LandSafe Report #2. Nevertheless, Landsafe indicated that its repeated reporting of the tax liens belonging to Plaintiff's parents as belonging to Plaintiff was justified as Defendants CRAs affirmatively represented on August 14, 2006 and November 20, 2006 that the subject of the credit date provided to Landsafe was a "match" with Plaintiff.  Landsafe further indicated that Defendants CRAs "did not indicate that the subject of the data was a "possible non-candidate," but without reservation assured Landsafe that Plaintiff was a "match" with all date reported.

101.

From June 2006 to June 2007 while Plaintiff's inaccurate credit reporting was continuing, the most damaging reporting was the State and Federal Tax liens of over $60,000.00, which belonged to Plaintiff's parents.  None of the credit reports, investigation or re-investigation reports, responses or notices of adverse action identified the entity or company that was providing the State and Federal lien misinformation to Trans Union.  Thus, Plaintiff had no way of contacting the furnisher of this information to have inaccurate information corrected or deleted from Plaintiff's credit reports. Plaintiff's efforts to do so directly with Trans Union were met only with

accusations that the disputes were frivolous.

102.

On June 21, 2007, LandSafe informed Plaintiff that his October 6, 2006 dispute to Trans Union regarding inaccurate reporting of tax liens resulted in verification of the inaccurately reported information by Trans Union's agent "LexisNexis" (which turned out to be Defendants LexisNexis). Thereafter, Plaintiff requested from Trans Union the contact information for Trans Union's furnisher (which Trans Union had identified as a "creditor") of the tax lien reporting in order to dispute the reporting directly to the furnisher. Trans Union informed Plaintiff that its furnisher (previously identified as Plaintiff's "creditor") was in fact its agent, "LexisNexis" that listed its address as P.O. Box 933, Dayton, Ohio 45401-933. Plaintiff requested a formal corporate name and physical address to permit adequate disputing directly to the furnisher. Trans Union refused to provide additional information such as LexisNexis' full corporate or business name or a physical contact address for dispute purposes. Consequently, Plaintiff performed exhaustive internet research to try to locate and identify the exact company furnishing credit information to Trans Union.

103.

On June 25, 2007, Plaintiff by certified mail return receipt requested, disputed the June 7, 2007 LandSafe Report #5 to Equifax who was identified as a source of the inaccurate information. Plaintiff provided Equifax his Hawaii State Driver's License

and Social Security Card in advance (inasmuch as Equifax has requested that Plaintiff prove his identity on several occasions), notified Equifax of the following inaccurate information, and explained the basis for the disputes as follows:

    a.    Social Security Number: The report list Social Security Number 575-28-xxxx. This is my father's Social Security Number.

    b.    Date of Birth: The report lists 11/08/1930. This is my father's date of birth.

104.

On June 25, 2007, Plaintiff notified Experian by certified mail return receipt requested that Experian was the source of several inaccuracies on the LandSafe Report #5. Plaintiff provided his Hawaii State Driver's License and his Social Security Card with this as Experian had reported in February 2007 that it could not access Plaintiff's credit report with the identification information Plaintiff had previously provided (Plaintiff had not provided identification information, but Experian used this as an excuse to delay addressing the dispute). Plaintiff again requested that Experian correct the inaccurate information within 30 days.

105.

Plaintiff notified Experian of the following disputes, and explained the basis for the disputes as follows:

63

a.  Address:  The report lists 78-9588 Mamalahoa Highway, Holualoa, Hawaii 96725 as my address.  This is not my address.  I have never lived at this address.  My correct address is 78-6588 Mamalahoa Highway, Holualoa, Hawaii 96725.

b.  Address: The report lists 78-65 Mamalahoa Highway, Holualoa, Hawaii 96725 as my address.  This is not my address.  I have never lived at this address.  My correct address is 78-6588 Mamalahoa Highway, Holualoa, Hawaii 96725.

106.

Once again, Experian was only reporting on the CBUSASEARS' Account and Citi/Shell in LandSafe #5 and did not report on Plaintiff's Experian missing accounts; or, Plaintiff's August 2006 loan with Countrywide (Loan #14427xxxx) and HELOC loan with Countrywide.  Experian's reporting was therefore incomplete and did not accurately depict Plaintiff's credit status.

107.

On June 27, 2007, Plaintiff, being aware that Trans Union had hired Defendants LexisNexis to furnish information about public records which resulted in the tax lien reporting and "verifications" to LandSafe and Trans Union, attempted to notify

Defendants LexisNexis by certified mail return receipt requested that Defendants

LexisNexis furnished inaccurate information that lead to inaccurate reporting on seven

credit reports: June  28, 2006, July, 10, 2006, August 8, 2006, August 14, 2006,

November 1, 2006, November 20, 2006 and June 7, 2007, respectively. Plaintiff's

June 27, 2007 dispute letter was sent by certified mail to LexisNexis Group,

LexisNexis Group (dba LexisNexis Document Solutions, LexisNexis Document

Services Inc.) to P.O. Box 933, Dayton, Ohio 45401-933. The dispute letter was

acknowledged delivered on August 3, 2007 and certificate returned posted on August

3, 2007.   Plaintiff also provided Defendants LexisNexis with his Hawaii State

Driver's License, Social Security Card and State Lien #1 and #2 and Federal Lien #1

(Plaintiff obtained copies of the actual recorded documents identifying his parents as

the subject of the liens) as enclosures to accompany the following disputes and

provided the reason for the inaccuracies as follows:

"The following information was reported inaccurately by Trans Union, LLC on

the 06/28/06 Equifax 3-in-1 Report."

> a.      State Lien #1 as reported by Trans Union. This is
>
> incorrect. This tax lien does not belong to Francis H.P.
>
> Keanaaina.  This account may belong to Francis H.P.
>
> Keanaaina's father who has the same first and last name,

but a different Social Security Number.

b.       State Lien #2 as reported by Trans Union.  This is

incorrect.  This tax lien does not belong to Francis H.P.

Keanaaina.  This account may belong to Francis H.P.

Keanaaina's father who has the same first and last name,

but a different Social Security Number.

c.       Federal Lien #1 as reported by Trans Union.  This is

incorrect. This tax lien does not belong to Francis H.P.

Keanaaina.  This account may belong to Francis H.P.

Keanaaina's father who has the same first and last name,

but a different Social Security Number."

"The following information was reported inaccurately by Trans Union, LLC on

the 07/10/06 CREDCO Instant Merge Credit Report."

a.       State Lien #1 as reported by Trans Union. This is

incorrect. This tax lien does not belong to Francis H.P.

Keanaaina.  This account may belong to Francis H.P.

Keanaaina's father who has the same first and last name,

but a different Social Security Number.

b.       State Lien #2 as reported by Trans Union.  This is

incorrect. This tax lien does not belong to Francis H.P.

Keanaaina.  This account may belong to Francis H.P.

Keanaaina's father who has the same first and last name,

but a different Social Security Number.

    c.       Federal Lien #2 as reported by Trans Union.  This is

incorrect.    This tax lien does not belong to Francis H.P.

Keanaaina.  This account may belong to Francis H.P.

Keanaaina's father who has the same first and last name,

but a different Social Security Number."

"The following information was reported inaccurately by Trans Union, LLC on

the 08/03/06 Trans Union, LLC Credit File # 158086903.

    a.       State Lien #1 as reported by Trans Union.  This is

incorrect.  This tax lien does not belong to Francis H.P.

Keanaaina.  This account may belong to Francis H.P.

Keanaaina's father who has the same first and last name,

but a different Social Security Number.

    b.       State Lien #2 as reported by Trans Union. This is incorrect.

This tax lien does not belong to Francis H.P. Keanaaina.

This account may belong to Francis H.P. Keanaaina's

father who has the same first and last name, but a different

Social Security Number.

c.      Federal Lien #1 as reported by Trans Union.  This is

incorrect. This tax lien does not belong to Francis H.P.

Keanaaina.  This account may belong to Francis H.P.

Keanaaina's father who has the same first and last name, but

a different Social Security Number.

d.      Federal Lien #2 as reported by Trans Union. This is

incorrect. This tax lien does not belong to Francis H.P.

Keanaaina.  This account may belong to Francis H.P.

Keanaaina's father who has the same first and last name, but

a different Social Security Number."

"The following information was inaccurately reported by Trans Union, LLC on

the 08/14/06 LandSafe Credit Merge Report.

a.      State Lien #1 as reported by Trans Union.  This is

incorrect. This tax lien does not belong to Francis H.P.

Keanaaina.  This account may belong to Francis H.P.

Keanaaina's father who has the same first and last name,

but a different Social Security Number.

b.      State Lien #2 as reported by Trans Union.  This is

incorrect. This tax lien does not belong to Francis H.P.

Keanaaina.  This account may belong to Francis H.P.

Keanaaina's father who has the same first and last name,

but a different Social Security Number.

108.

On June 27, 2007, Plaintiff sent his June 27, 2007 dispute letter to LexisNexis

Document Solutions, Inc. (a public record search company identified on the website of

LexisNexis) at its corporate headquarters located at 2711 Centerville Road, Suite 400,

Wilmington, DE 19808.   This address is the registered address for LexisNexis

business operations in the State of Hawaii as listed with the State of Hawaii's

Department of Commerce and Consumer Affairs and as registered under the State of

Delaware's Division of Corporations.  The June 27, 2007 dispute letter sent to this

address was returned to Plaintiff with no forwarding address.  The original dispute

letter was literally returned in its entirety, envelope and all, by certified mail.

109.

Plaintiff also sent the June 27, 2007 dispute letter to "LexisNexis" by sending

it to LexisNexis Group (dba LexisNexis Document Solutions, LexisNexis Document

Services Inc.)(another public record search company identified on the LexisNexis

website) at 275 Washington Street Newton, Massachusetts 02458.  This dispute letter

was acknowledged as delivered on August 3, 2007 and certificate returned posted on August 3, 2007.

110.

On June 27, 2007, Plaintiff notified LandSafe by certified mail return receipt requested that LandSafe Credit Reports #1, #2, and #3 contained inaccuracies as reported by Trans Union.  Plaintiff notified LandSafe of the following disputed information and explained the basis for the disputes as follows;

    a.    Central Pacific Bank Account No. 312xxx, does not
          belong to Francis Keanaaina.  This account may belong
          to Francis Keanaaina's father who has the same first
          name and last name, but a different Social Security
          Number.

111.

The inaccurate reporting of the Central Pacific Account had previously been disputed with LandSafe by letter dated October 6, 2006 and November 20, 2006 , respectively.

112.

On June 27, 2007, Plaintiff notified Central Pacific Bank by certified mail return receipt requested, that ten credit reports from July 10, 2006 through January 12, 2007 contained several inaccuracies.  Plaintiff notified Central Pacific Bank of

the following disputes and explained the basis for the disputes as follows:

    a.    Central Pacific Bank Account Nos. 312xxx, 312320xxxx

        and 312320xxxx (collectively "all CPB Accounts") are

        not Plaintiff's bank accounts.  These accounts may

        belong to Plaintiff's father who has the same first name

        and last name, but a different Social Security Number.

113.

On June 27, 2007, due to LandSafe's failure to correct information identified in dispute letters previously sent to LandSafe on October 6, 2006 and December 15, 2006, Plaintiff decided to present a more thorough dispute to Landsafe.  Plaintiff submitted a dispute to LandSafe by certified mail return receipt informing Landsafe that LandSafe Credit Report # 5 of June 7, 2007 contained several inaccuracies reported by Trans Union and requesting a timely investigation.  In an effort to prevent Landsafe from further reporting inaccurate information, Plaintiff enclosed with the dispute, (1) three of the disputed tax liens (State Lien #1 and #2 and Federal Lien #1), (2) Plaintiff's driver's license and social security card, (3) State of Hawaii records identifying Plaintiff's father, Francis Keanaaina's tax liens, (4) Notice of Federal Tax Lien referencing Social Security No. 575-28-xxxx (Plaintiff's father's SSN) as the identifying number for the tax lien, and (5) State of Hawaii records identifying Plaintiff's Mother, Anna Keanaaina's tax liens.  Plaintiff demanded that

the following disputed information be corrected and explained the basis for the disputes as follows:

    a.      Federal Lien #1 as reported by Trans Union. This tax lien does not belong to Francis H. P. Keanaaina. This account may belong to Francis H. P. Keanaaina's father who has the same first and last name, but a different Social Security Number. This information is being reported by Trans Union, LLC.

    b.      State Lien #1 as reported by Trans Union. This tax lien does not belong to Francis H. P. Keanaaina. This account may belong to Francis H. P. Keanaaina's father who has the same first and last name, but a different Social Security Number. This information is being reported by Trans Union, LLC.

    c.      State Lien #2 as reported by Trans Union. This tax lien does not belong to Francis H. P. Keanaaina. This account may belong to Francis H. P. Keanaaina's father who has the same first and last name, but a different Social Security Number. This information is being

reported by Trans Union, LLC.

114.

On June 27, 2007, as Trans Union had not corrected the inaccuracies brought to Trans Union attention in prior dispute letters to Trans Union dated June 26, 2006, October 6, 2006 and December 15, 2006, Plaintiff submitted a dispute to Trans Union by certified mail return receipt informing Trans Union of inaccuracte reporting on the LandSafe Credit Report #5.   In an effort to prevent Trans Union from further reporting inaccurate information, Plaintiff enclosed with the dispute, (1) three of the disputed tax liens (State Lien #1 and #2 and Federal Lien #1), (2) Plaintiff's driver's license and social security card, (3) State of Hawaii records identifying Plaintiff's father, Francis Keanaaina's tax liens, (4) Notice of Federal Tax Lien referencing Social Security No. 575-28-xxxx (Plaintiff's father's SSN) as the identifying number for the tax lien, and (5) State of Hawaii records identifying Plaintiff's Mother, Anna Keanaaina's tax liens.  Plaintiff demanded that the following disputed information be corrected and explained the basis for the disputes as follows:

a.     Address: The report lists 78 Mamalahoa HY 6588, Holualoa, HI 96725 as my address.  This is incorrect. My correct address is 78-6588 Mamalahoa Highway, Holualoa, HI 96725.

b.   Federal Lien #1 as reported by Trans Union.  This tax lien does not belong to Francis H. P. Keanaaina.  This account may belong to Francis H. P. Keanaaina's father who has the same first and last name, but a different Social Security Number.  This item remains over my dispute of December 15, 2006.

c.   State Lien #1 as reported by Trans Union. This tax lien does not belong to Francis H. P. Keanaaina.  This account may belong to Francis H. P. Keanaaina's father who has the same first and last name, but a different Social Security Number.  This item remains over my dispute of December 15, 2006.

d.   State Lien #2 as reported by Trans Union. This tax lien does not belong to Francis H. P. Keanaaina.  This account may belong to Francis H. P. Keanaaina's father who has the same first and last name, but a different Social Security Number.  This item remains over my dispute of December 15, 2006.

e.   AKA   Information The report lists my name as Keana,

Francis, HenrPohukai.  This is incorrect.

My name is Francis Henry Pohukaina Keanaaina.

### 115.

On June 27, 2007, Plaintiff notified Trans Union of the following updated disputes in ten credit reports from June 28, 2006 to January 12, 2007 regarding all CPB Accounts, noting that the accounts do not belong to Francis H.P. Keanaaina but that the accounts may belong to Francis H.P. Keanaaina's father who has the same first and last name, but a different Social Security Number.

### 116.

The June 27, 2007 disputes to Trans Union remained unresolved and was again provided to Trans Union with supportive State and Federal Lien information and Plaintiff's Hawaii State Driver's License and Social Security Card, through Trans Union's counsel, Robert Schuckit, by certified mail return receipt requested on July 10, 2007.

### 117.

On or about June 29, 2007, Plaintiff contacted Home Lending Place and explained that he was looking for a loan program to refinance his existing loans to finance the remaining construction of the O'hana home. On July 02, 2007, after contacting five of Home Lending Place's primary lenders, Plaintiff was informed by Home Lending Place that they had five denials due to Plaintiff's negative credit

report due to reporting inaccuracies as represented by a KROLL Bureau Credit Report of June 29, 2007 and would not be able to provide a loan "for the same reason that Countrywide would not be able to". Home Lending Place further informed Plaintiff that, (1) <u>Experian was not showing a credit score indicating that "Risk score not available due to model exclusion criteria.</u>", and, (2) <u>Equifax was not reporting a credit score due to "No Hit/No Record Found."</u>

118.

On June 29, 2007, Plaintiff became aware of inaccuracies reported on the Knoll Bureau Report Credit Report by Trans Union. The inaccuracies were as follows:

    a.   Address: 78-9588 Mamalahoa Highway, Holualoa, Hawaii 96725 reported as Plaintiff's address. This is not Plaintiff's address. Plaintiff has never lived at this address. Plaintiff's correct address is 78-6588 Mamalahoa Highway, Holualoa, Hawaii 96725.

    b.   Address: 78-65 Mamalahoa Highway, Holualoa, Hawaii 96725 reported as Plaintiff's address. This is not Plaintiff's address. Plaintiff has never lived at this address. Plaintiff's correct address is 78-6588 Mamalahoa Highway, Holualoa, Hawaii 96725.

c.    Address:  78 Mamalahoa Hy. 6588, Holualoa, Hawaii 96725 is reported as Plaintiff's address.  This is not Plaintiff's address.  Plaintiff has never lived at this address.  Plaintiff's correct address is 78-6588 Mamalahoa Highway, Holualoa, Hawaii 96725.

d.    Address:  151 P.O. Box 151, Kailua, Kona, HI. 96745 reported as Plaintiff's address.  This is not Plaintiff's address.  Plaintiff has never lived at this address. Plaintiff's correct address is 78-6588 Mamalahoa Highway, Holualoa, Hawaii 96725.

e.    AKA Name: Keana, Francis, Henrpohukai as reported as a name Plaintiff is also know as.  This is incorrect. Plaintiff has never been known by this name.

119.

Once again, Experian was only reporting on the CBUSASEARS' Account and Citi/Shell in the Kroll Bureau Credit Report and did not report on Plaintiff's Experian missing accounts, or Plaintiff's August 2006 loan with Countrywide (Loan #14427xxxx), or Plaintiff's February, 2007 HELOC with Countrywide.  Experian's reporting was therefore incomplete and did not accurately depict Plaintiff's credit status.  In addition, despite providing a credit score based on identical reporting in the

past, Experian was now unable to provide a credit score due to inadequate accounts being reported regarding Plaintiff.

120.

Equifax did not report on any accounts regarding Plaintiff on the Kroll Bureau Credit Report.

121.

In dealing with various companies in July 2007 to get additional financing to finish the construction of Plaintiff's O'hana home, Optima Mortgage obtained LandSafe Credit Merge Report dated July 7, 2007 ("LandSafe Report #6) which indicated that Experian was still not showing a credit score under the Experian/Fair, Issac Model, but reporting that a "score was not available due to model exclusion criteria." Additional inaccuracies being reported in LandSafe Report #6 include:

   a.   Shell/Citi/1005-xxxx. This is incorrect. Plaintiff's
        account is Shell/Citi/ 1004-xxxx. This may be
        Plaintiff's father's account.

   b.   Address:  78-9588 Mamalahoa Highway, Holualoa,
        Hawaii 96725 as reported by Experian as Plaintiff's
        address.  This is not Plaintiff's address.  Plaintiff has
        never lived at this address.  Plaintiff's correct address is
        78-6588 Mamalahoa Highway, Holualoa, Hawaii 96725.

c.   Address:  78-65 Mamalahoa Highway, Holualoa, Hawaii 96725 as reported by Experian as Plaintiff's address. This is not Plaintiff's address.  Plaintiff has never lived at this address.  Plaintiff's correct address is 78-6588 Mamalahoa Highway, Holualoa, Hawaii 96725.

d.   Address:  78 Mamalahoa Hy. 6588, Holualoa, Hawaii 96725 as reported by Trans Union as Plaintiff's address. This is not correct. Plaintiff has never lived at this address.  Plaintiff's correct address is 78-6588 Mamalahoa Highway, Holualoa, Hawaii 96725.

e.   Address:  151 P.O. Box 151, Kailua, Kona, HI. 96745 as reported by Trans Union as Plaintiff's address.  This is not correct. Plaintiff has never lived at this address. Plaintiff's correct address is 78-6588 Mamalahoa Highway, Holualoa, Hawaii 96725.

f.   AKA Name: Keana, Francis, Henrpohukai as reported by Trans Union.  This is incorrect.  Plaintiff has never been known by this name.

122.

Once again, Experian was only reporting on the CBUSASEARS'Account and Citi/Shell in Landsafe Report #6 and did not report on Plaintiff's Experian missing accounts, or Plaintiff's August 2006 loan with Countrywide (Loan #14427xxxx), or Plaintiff's February, 2007 HELOC with Countrywide.   Experian's reporting was therefore incomplete and did not accurately depict Plaintiff's credit status.   In addition, despite providing a credit score based on identical reporting in the past, Experian was now unable to provide a credit score due to inadequate accounts being reported regarding Plaintiff.

123.

Equifax is now reporting again, but continues to report inaccurately as follows:

    a.    Shell/Citi/1005-xxxx. This is incorrect. Plaintiff's account is Shell/Citi/ 1004-xxxx. This may be Plaintiff's father's account.

    b.    Address:  P.O. Box 1146, Kailua Kona.  This is incorrect.  Plaintiff's address is 78-6588, Mamalahoa, Hwy Holualoa, HI 96725.

    c.    AKA Information: Keana, Francis Henr. This is incorrect.  Plaintiff is not also known as "Keana, Francis Henr."

124.

On or about July 10, 2007, Plaintiff reviewed a LandSafe Credit Merge Report dated July 10, 2007 (LandSafe Report #7), obtained by Countrywide for credit consideration.

125.

Plaintiff observed the following inaccuracies being reported to Landsafe:

a.    Social Security Number 575-28-xxxx as reported by Equifax is incorrect.  Plaintiff's Social Security Number is 575-27-xxxx. Social Security Number 575-28-xxxx is Plaintiff's father's.

b.    Date of Birth 11/08/1930 (76) as reported by Equifax is incorrect and is Plaintiff's father's date of birth. Plaintiff's date of birth is 5/16/1968 (39).

c.    Name:  Keanaaina, Francis H. as reported by Experian.  This is incorrect.  Plaintiff's name is Keanaaina, Francis H.P.  In addition, Experian/Fair, Issac Model is not reporting, "score is not available due to model exclusion criteria.

126.

The inaccuracies in Plaintiff's credit report resulted in Countrywide offering higher credit rates: $532,500 at 6.75% and the HELOC interest rate at 10.625%.

127.

Once again, Experian was only reporting on the CBUSASEARS'Account and Citi/Shell in Landsafe Report #7 and did not report on Plaintiff's Experian missing accounts, or Plaintiff's August 2006 loan with Countrywide (Loan #14427xxxx), or Plaintiff's February, 2007 HELOC with Countrywide.   Experian's reporting was therefore incomplete and did not accurately depict Plaintiff's credit status.   In addition, despite providing a credit score based on identical reporting in the past, Experian was now unable to provide a credit score due to inadequate accounts being reported regarding Plaintiff.

128.

On July 18, 2007, Plaintiff received a letter and a Trans Union Credit Report dated July 18, 2007 (Trans Union Report #7) through Trans Union's counsel, Robert Schuckit.   Plaintiff identified the following inaccuracies as reported by Trans Union on Trans Union Report #7:

a.   Address: 78 Mamalahoa Hy. 6588, Holualoa, Hawaii 96725 as reported by Trans Union as Plaintiff's address. This is not correct.   Plaintiff has never lived at this address.   Plaintiff's correct address is 78-6588 Mamalahoa Highway, Holualoa, Hawaii 96725.

b.   Address:  151 P.O. Box 151, Kailua, Kona, HI. 96745 as

82

reported by Trans Union as Plaintiff's address.  This is not correct.  Plaintiff's correct address is 78-6588 Mamalahoa Highway, Holualoa, Hawaii 96725.

 c. AKA Name: Keana, Francis , Henrpohukaina. This is incorrect. Plaintiff has never been known by this name.

129.

Trans Union also removed several favorably reported accounts pertaining to Plaintiff that were reported on prior Trans Union reports:

 a. Countrywide HELOC loan (8/2006)

 b. Shell/CITI # 1005xxxx (paid and closed)

 c. FairField Resorts #95210xxxx (paid and closed)

 d. First Hawaiian Bank Checking Credit Reserve #53-20xxxx.

 e. Countrywide HELOC loan (2/2007)

130.

On July 24, 2007, Plaintiff signed up for MyFICO internet credit reports so he could monitor any irregularities that were going on regarding his credit reports. On July 24th Plaintiff's MyFICO Credit Report listed an Equifax credit score of only 676, a drop of 56 points from Plaintiff's June 7, 2007 LandSafe Credit Report #5 reported score.  This reported low score was having a negative effect on Plaintiff's ability to

83

obtain credit and to obtain credit at a low rate.

131.

On August 20, 2007, Equifax in response to Plaintiff's dispute letters regarding LandSafe Reports #1, #2 and #3, provided <u>a written response by mail to Plaintiff's father house at P.O. Box 151, Kailua-Kona, Hawaii 96745</u>.  This is the incorrect address for Plaintiff as Plaintiff's address is 78-6588 Mamalahoa Hwy, Holualoa, Hawaii 96725.  The Equifax credit report received August 27, 2007 contains Plaintiff's father's credit information and includes the following inaccuracies:

    a.    Former Address: 78-6588 Mamalahoa Hwy, Holualoa, Hawaii 96725.  This is incorrect.  This is Plaintiff's current address, not his former address.

    b.    Social Security Number 575-28-xxxx is reported as Plaintiff's Social Security Number.  This is incorrect.  The reported Social Security Number 575-28-xxxx is Plaintiff's father's Social Security Number.

132.

The following reported accounts are attributed to Plaintiff but are the accounts of Plaintiff's parents:

    a.    First Hawaiian Bank #6751xxxx Check Credit line of $800.00 as reported.  This is incorrect.  The account

belongs to Plaintiff's parents, Francis and Anna k. Keanaaina, not Plaintiff.

    b.    FHB Dealer Ctr. # 10001000xxxx as reported.  This is incorrect.  This account belongs to Francis and Anna Keanaaina, not Plaintiff.

133.

Equifax also deleted several accounts previously reported on regarding Plaintiff as follows:

    a.    Fairfield Resorts #95210xxxx

    b.    First Hawaiian Bank MC # 5416-1160-1701-xxxx

    c.    First Hawaiian Bank Dealer Ctr. Car Loan #100010007175xxxx.

    d.    First Hawaiian Bank Checking Credit Reserve #53-20xxxx.

    e.    Countrywide Home Loan #14427xxxx

    f.    Countrywide Home Loan #1001xxxx

    g.    Sears/CBSD # 1003xxxx

    h.    Shell/CITI # 1005xxxx

    i.    Credit Inquiries are included inquiries relating to Plaintiff's father's and are therefore incorrect:

1. AR-Operating Engineers Local #3 as reported. This is incorrect. This trade line belongs to Plaintiff's father.

2. PRM Liberty Mutual Insurance as reported. This is incorrect. This trade line belongs to Plaintiff's father.

3. PRM Capital One as reported. This is incorrect. This trade line belongs to Plaintiff's father.

134.

On, August 29, 2007, IndyMac contacted Guaranteed Rate, Inc. with a loan denial regarding Plaintiff. Guaranteed Rate, Inc. had researched loan options with 40 of their lenders, 38 of them would not provide a loan for Plaintiff due to his poor credit scores. The only two companies that would consider providing Plaintiff a loan were Citi and ALS. The rate with Citi offered was 8.25% on a totally new 30-year primary loan with no home equity loan program. ALS would do a 5-year ARM loan at a rate of 8.875%. Both programs would have been a major step backwards financially with high interest rates and monthly payments. Because of the incorrect and inaccurate credit reporting, Plaintiff was denied an opportunity for lower rate credit he could afford and a loan to finished construction of the O'hana home.

135.

Plaintiff received an Experian Credit Report on August 30, 2007 on Plaintiff's father, Francis Keanaaina, Sr. The August 30, 2007 Experian Credit Report appears to

have merged the credit files of Plaintiff and his father.   <u>Experian reported on the following accounts of Plaintiff on his father's credit report</u>:

    a.    First Hawaiian Bank Account # 10001000xxxx as reported. This is incorrect.  This is Plaintiff's account

    b.    Countrywide Home Loan # 14427xxxx as reported.  This is incorrect.  This is Plaintiff's loan account;

    c.    Countrywide Home Loan # 1001xxxx as reported.  This is incorrect.  This is Plaintiff's loan account.

    d.    First Hawaiian Bank Account # 5320xxxx as reported.  This is incorrect.  This is Plaintiff's loan account.

    e.    First Hawaiian Bank Account # 54161160xxxx ($10,000 credit limit) as reported.  This is incorrect.  This is Plaintiff's account.

    f.    Sears/CBSD #11500xxxx as reported.  This is incorrect.  This is Plaintiff's account.

    g.    Social Security Number 575-27-xxxx as reported.  This is incorrect.   Social Security Number 575-27-xxxx is Plaintiff's Social Security Number not his father's whose Social Security Number is 575-28-xxxx.

136.

In September 2007, Countrywide proposed that Plaintiff cash out both loans, and obtain a new larger primary loan to replaced the existing loans. Plaintiff accepted a Home Equity Line of Credit (9.625%) and a primary mortgage with Countrywide (6.635%) to fund the completion of construction on the O'hana Home. Both loans have higher interest rates than Plaintiff would have been able to obtain, but for the inaccurate information being reported by Defendant CRAs.

137.

While Plaintiff notified Defendants LexisNexis of the disputes concerning the inaccuracies of the reported Federal and State Tax Liens by letters sent June 27, 2007 and July 30, 2007, as noted above, Plaintiff did not receive a response from Defendants LexisNexis until September 17, 2007. Defendants LexisNexis claimed the dispute letter were not received until about August 8, 2007, despite certified receipts to the contrary. In addition, LexisNexis claimed that it provided a previous response to the July disputes, but the response was sent to an incorrect address on September 4, 2007.

138.

Plaintiff no longer has faith that his credit will be restored to its original status. He has made every effort to correct the inaccuracies that are being reported by the Defendants CRAs, LandSafe and furnished by Defendants LexisNexis. The enormous time and effort Plaintiff has undertaken to correct inaccuracies in his credit reports

have failed as demonstrated by the Defendants CRAs, LandSafe, Defendants LexisNexis continued reporting of disputed inaccuracies. As a result of the chronic inaccuracies reporting on Plaintiff's credit reports published and reported to potential creditors from the Defendants CRAs, Plaintiff has suffered, and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to his reputation, invasion of privacy, and emotional distress.

139.

Even after the original suit in this action was filed on March 5, 2007, Plaintiff continues to have to expend substantial time and repeated efforts in an attempt to correct inaccurate credit reports due to Defendants CRAs, Defendants LexisNexis and LandSafe's continued and relentless reporting of inaccurate Information.

140.

Plaintiff has been in a constant battle with the Defendants to obtain accurate credit reporting for over a year and a half. During the entire time that he was building the new family home he was plagued by the threat that his dream might not be realized due to his lack of credit or even ability to obtain a credit card for nails, paint and finishing touches for the O'hana home. The new home is now coming to completion but the journey of building the O'hana home lost its joy due to the credit turmoil and resulting stress, as well as the daily embarrassment endured by Plaintiff in a very small community.

141.

Because of the chronic, reckless and willful inaccuracies in the reporting on Plaintiff's credit reports, published and republished and reported to potential creditors, Plaintiff has suffered, and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to his reputation, invasion of privacy, and emotional distress.

142.

## REQUEST FOR TRIAL BY JURY

Plaintiff requests a trial by jury.

## FIRST CLAIM FOR RELIEF

(Against Defendants CRAs and Defendant LandSafe)

(Fair Credit Reporting Act, 1681e[b])

143.

Plaintiff realleges and reavers the allegations contained in Paragraphs 1 through 142 hereinabove as if fully stated herein.

144.

Defendants CRAs failed to adopt and follow "reasonable procedures" to assure the maximum possible accuracy of Plaintiff's consumer credit and other personal information, as required by the Fair Credit Reporting Act, which they compiled, used and manipulated, in order to prepare consumer credit reports, credit

90

scores, risk factors/denial codes and other economic and prediction date evaluations.

145.

Defendants CRAs and LandSafe have continually added, stored, maintained, assembled, merged and disseminated personal and credit information, in consumer reports it prepared and issued and merged, about the Plaintiff which was inaccurate, false, erroneous and misleading despite notice from the Plaintiff and subscribers that such information was inaccurate.

146.

Defendants CRAs and LandSafe have willfully, or alternatively, negligently, violated the Fair Credit Reporting Act, 15 U.S.C. §1681e[b]; and, Plaintiff is entitled to punitive damages under 15 U.S.C. 1681n(a)(2) or as otherwise provided by law.

147.

Plaintiff requests attorney fees pursuant to 15 U.S.C. §1681n and §1681o.

## SECOND CLAIM FOR RELIEF

(Against Defendant LandSafe)

(Fair Credit Reporting Act, §1681i[a] and [f], and §1681e[b])

91

148.

Plaintiff realleges and reavers the allegations contained in Paragraphs 1 through 147 hereinabove as if fully stated herein.

149.

Defendant LandSafe as a reseller of information pursuant to 15 USC §1681a(u), exchanged information about Plaintiff's disputes through their reinvestigation.

150.

Plaintiff advised Defendants CRAs through its subscribers and directly, on multiple occasions, of the disputed and false data reported in Plaintiff's consumer credit report and demanded that the data be removed from their consumer credit reports and data files.

151.

Defendant LandSafe failed to properly reinvestigate, and take the actions and responses required by §1681i[a] and [f] regarding Plaintiff's disputes and Defendants CRAs continued to prepare and publish false consumer reports.

152.

Defendant LandSafe as a reseller was very aware of Plaintiff's disputes, as well as its inadequate and illegal reinvestigation, and the subscribers' responses to

the numerous and varied contacts and its decision to leave disputed, false data as attributable to Plaintiff.

153.

Defendant failed to use reasonable procedures to reinvestigate Plaintiff's disputes and, likewise, took inadequate action to correct Plaintiff's consumer reports or delete the false data or otherwise conduct an appropriate, lawful reinvestigation.

154.

Defendant LandSafe failed to take the actions required in 15 U.S.C. §1681a[f] regarding reinvestigation requirements related to resellers and failed to take necessary and reasonable steps to prevent further inaccuracies from entering Plaintiff's credit file data and such false data continued to be posted as new consumer credit reports were prepared, issued and disseminated by Defendants CRAs and relayed for further use, reliance and publication by their subscribers.

155.

Defendant LandSafe failed to adopt and follow reasonable procedures to assure the proper reinvestigation, accuracy, deletion and/or suppression of false data appearing on Plaintiff's consumer reports and as contained in their consumer reporting data bank, as required by the Fair Credit Reporting Act.

156.

Further, on several occasions, Defendant LandSafe sent reinvestigation results to Plaintiff which evidenced their decision to merely mimic its subscribers' reply to the inadequate reinvestigation disputes Defendants CRAs conveyed.

157.

Defendant LandSafe has willfully, or alternatively, negligently, violated the Fair Credit Reporting Act, 15 U.S.C. §1681i[a] and [f] and §1681e[b]; and, Plaintiff is entitled to punitive damages under 15 U.S.C. §1681n(a)(2) or as otherwise provided by law.

158.

Plaintiff requests attorney fees pursuant to 15 U.S.C. §1681n and §1681o.

THIRD CLAIM FOR RELIEF

(Against Defendants LexisNexis)

(Fair Credit Reporting Act, §1681s-2[b])

159.

Plaintiff realleges and reavers the allegations contained in Paragraphs 1 through 158 hereinabove as if fully stated herein.

160.

Defendants CRAs advised Defendants LexisNexis that Plaintiff disputed the subject accounts and false credit reportings.

94

161.

Despite receipt of the same dispute a number of times, Defendants LexisNexis failed to respond, failed to acknowledge the disputes and/or repeatedly reported the false, inaccurate and derogatory information to the Defendants CRAs in violation of the Act.

162.

Rather, Defendants LexisNexis continued to report false and inaccurate information and failed to retract, delete and suppress false and inaccurate information it reported about the Plaintiff.

163.

Defendants LexisNexis failed to review all relevant and pertinent information provided to it by the Defendants CRAs and Plaintiff.

164.

Defendants LexisNexis on many occasions, failed to acknowledge Plaintiff's disputes and to advise the Defendants CRAs of receipt of such disputes and complaints with regard to consumer credit data it had been reporting and re-reporting about Plaintiff.

165.

Defendants LexisNexis were aware that their reportings and activities would [and will] damage Plaintiff and his ability to enjoy life and utilize the credit rating

95

and reputation property rights he secured by honoring his obligations to all of his creditors.

### 166.

Defendants LexisNexis have likewise willfully, or alternatively, negligently, violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2[b]; and Plaintiff is entitled to punitive damages under 15 U.S.C. §1681n(a)(2) or as otherwise provided by law.

### 167.

Plaintiff requests attorney fees pursuant to 15 U.S.C. §1681n and §1681o.

### FOURTH CLAIM FOR RELIEF

(Against Defendants LexisNexis)

(Unfair and Deceptive Trade Practices, H.R.S. §480-2 et al.)

### 168.

Plaintiff realleges and reavers the allegations contained in Paragraphs 1 through 167 hereinabove as if fully stated herein.

### 169.

As noted above, Defendant LexisNexis Risk is not registered to do business in the State of Hawaii and does not have a registered mailing address or agent in the State of Hawaii.  Defendant LexisNexis Document is a foreign profit corporation registered with the State of Hawaii Department of Commerce and

Consumer's Affairs (hereinafter "Department") as required under H.R.S. §414-16(2).  As part of LexisNexis Documents' registration with the Department, LexisNexis Document indicated that its mailing address is 2711 Centreville Rd., Ste 400, Wilmington Delaware, 19808. United States of America.

170.

As recited in paragraphs above, Trans Union on seven occasions verified, through Defendants LexisNexis, disputed information and LexisNexis updated inaccuracies as being accurate.  LexisNexis as one of Trans Union's furnisher's was confirmed by Trans Union and Trans Union believed LexisNexis was actually LexisNexis Group, and that its mailing address was P.O. Box 933, Dayton, Ohio 45401-0933.

171.

Due to the inaccuracies in Defendants LexisNexis' information, reports, investigations and reinvestigations for Defendant CRAs, pursuant to the Fair Credit Reporting Act 15 USC §1681s-2(b) and 15 USC §1681i Plaintiff sent a dispute letter to LexisNexis at 2711 Centerville Rd., Ste. 400, Wilmington, DE 19808 by Certified Mail Receipt #7007 0710 0003 2693 4265.

172.

The dispute letter of June 27, 2007 was returned to Plaintiff; the letter had been opened and then placed in a new envelope and returned to Plaintiff with no explanation.

173.

The registration and identification of LexisNexis as a furnisher of Plaintiff's information is incomplete, confusing and ambiguous, as it is a trade name, and many corporations use the name LexisNexis, including, but not limited to LexisNexis Documents, LexisNexis Group, LexisNexis Public Records, LexisNexis Risk, it is unclear which entity to which a consumer or Plaintiff is to send dispute letters to comply with Fair Credit Reporting Act 15 USC §1681s-2(b) and 15 USC §1681i. Thus, making it very difficult to provide a dispute letter to Defendants LexisNexis and uncertain as to whether the correct business entity is being provided the dispute letter and or whether the dispute letter arrives at the correct corporate location address. LexisNexis computer site was of no assistance with proving information where dispute letters could be sent for attention. In essence, Defendants LexisNexis have intentionally shielded themselves from furnishing questionable and inaccurate credit information by not accurately identifying their corporation identity or mailing address, not registering with the State of Hawaii, Department of Commerce and Consumer Affairs and being

unreachable to consumers and Plaintiff, and therefore, circumventing its obligations and responsibilities to Plaintiff under the law and denying Plaintiff his right to fair credit reporting and redress relating to disputes.

174.

By facsimile on August 13, 2007, in response to a phone call from corporate counsel for "LexisNexis" Mashawn Simpson, regarding Plaintiff disputes with Defendants LexisNexis, Plaintiff requested attorney Simpson to inform Plaintiff of her relationship to "LexisNexis." On September 17, 2007, Ms. Simpson responded on behalf of Defendant LexisNexis Risk and did not identify her, or Defendant LexisNexis Risk's relationship to Defendant LexisNexis Documents or other Lexis Nexis entities.

175.

The intentional and/or negligent actions and inactions of Defendants LexisNexis, outside the scope of proving information, has caused Plaintiff damages in that Plaintiff was denied a reasonable time in which to have Defendants LexisNexis responded to his dispute with LexisNexis, and interfered with Plaintiff's entitlement to make disputes, receive reinvestigation and obtain accurate credit reports relating to Plaintiff's information.

99

176.

The actions and inactions of Defendants LexisNexis in avoiding contact by Plaintiff, by being secretive in its corporate identify, location and mailing address for disputes in relation to credit reporting has been deceptive and its acts and practices were misleading  and an unfair and deceptive trade practice in violation of Hawaii Revised Statutes, §480-2 et al. and caused Plaintiff special and general damages due to continuing and unresolved inaccuracies in his credit reports and entitling Plaintiff to attorney's fees , costs and treble damages for each violation pursuant to H.R.S. §480-13.

**WHEREFORE PLAINTIFF PRAYS** that after all due proceedings be had there by judgment herein in favor of Plaintiff and against Defendants, as follows:

1)   That judgment be entered in favor of Plaintiff and against Defendants EQUIFAX INFORMATION SERVICES, LLC, TRANS UNION, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., AND LANDSAFE CREDIT, INC., jointly, severally and in solido, for all special and general damages sustained by Plaintiff as alleged in First Claim for Relief herein;

2)   That judgment be entered in favor of Plaintiff and against Defendant LANDSAFE CREDIT, INC. for all special and general damages sustained by Plaintiff as alleged in the Second Claim for Relief herein;

3)    That judgment be entered in favor of Plaintiff and against Defendants LEXISNEXIS DOCUMENT SOLUTIONS, INC. and LEXISNEXIS RISK AND INFORMATION ANALYTICS GROUP, INC. jointly, severally and in solido, for all special and general damages sustained by Plaintiff as alleged in the Third Claim for Relief herein;

4)    That judgment be entered in favor of Plaintiff and against Defendants LEXISNEXIS DOCUMENT SOLUTIONS, INC. and LEXISNEXIS RISK AND INFORMATION ANALYTICS GROUP, INC. jointly, severally and in solido, for all special and general damages sustained by Plaintiff as alleged in the Fourth Claim for Relief, including treble damages for unfair and deceptive trade practices in violation of Hawaii Revised Statutes §480-2 and §480-13.

5)    That Plaintiff be awarded reasonable attorney's fees and costs as allowed under the law.

6)    That Plaintiff be awarded pre and post judgment interest.

FURTHER, Plaintiff prays for all such additional, general and equitable

relief as this Court may be necessary and as proven at trial.


DATED:    Honolulu, Hawaii, January 16, 2007.


MARK D. CLEMENT

Attorney for Plaintiff
FRANCIS H. P. KEANAAINA

102